STATE OF NEBRASKA, APPELLEE, V.
JAMES QUARRELS, APPELLANT.

318 N.W.2d 76

Filed April 9, 1982. No. 44152.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Martel J. Bundy, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

MCCOWN, J.

The defendant was charged on one count of first degree sexual assault and one count of using a knife in the commission of a felony. A pretrial hearing was held to determine the defendant's competency to stand trial, and the court found the defendant competent to stand trial. The defendant then pleaded guilty to the forcible sexual assault count and the second count was dismissed. After presentence investigation the District Court sentenced the defendant to a term of 6 to 10 years' imprisonment and also found that the defendant was a treatable mentally disordered sex offender and ordered him

committed to the Lincoln Regional Center. The issue on appeal involves the competency of the defendant to stand trial and to plead guilty to the charge.

The record establishes that on August 29, 1980, the defendant committed a first degree sexual assault on a female victim and used a knife in the commission of the offense. The defendant was born September 2, 1954, and quit school when he was in the ninth grade.

At the competency hearing held prior to the entry of the guilty plea, three medical witnesses testified. A psychiatrist, Dr. Tweddle, and a clinical psychologist, Dr. Mitchell, both connected with Creighton University School of Medicine, testified on behalf of the defendant. In their opinion, the defendant was incompetent to stand trial. Dr. Woytassek, a psychiatrist and chief of the security service at the Lincoln Regional Center, testified for the State that the defendant was competent to stand trial. Staff reports of Regional Center doctors supported his opinion.

The expert witnesses agreed that the defendant was mildly mentally retarded, which classification includes persons with an IQ of 55 to 69. The defendant's verbal IQ was 55, his performance IQ 69, and his full-scale IQ 59.

Dr. Tweddle interviewed the defendant on two occasions. In October 1980 she saw the defendant for about 20 minutes, and in November 1980 she saw him, together with Dr. Mitchell and the defendant's attorney, for a period of approximately 1½ hours. Dr. Tweddle testified that this was the first time she had evaluated a person in the defendant's level of mental retardation as to competency to stand trial, and also testified that defendant's mental retardation was a permanent condition and would not improve. Dr. Tweddle found nothing in the defendant's condition that qualified as a mental illness as

that term is used by the Board of Mental Health.

Dr. Mitchell essentially agreed with Dr. Tweddle's conclusions. Dr. Mitchell had first interviewed and tested the defendant in 1976 in connection with a former sexual assault charge, and at that time had also concluded that the defendant was not competent to stand trial. He examined the defendant in connection with this case on October 20, 1980, and November 5, 1980, for a total time of approximately 4 hours. Dr. Mitchell noted that the IQ test results in 1980 were consistent with the IQ tests of 1976. Dr. Mitchell was of the opinion that the defendant was not competent to stand trial in 1980, and that the basis for defendant's lack of competence appeared to be mental retardation. He also agreed with Dr. Tweddle that it was unlikely that the defendant could become competent in the future.

Dr. Woytassek, as psychiatrist at the Lincoln Regional Center, had also examined the defendant in 1976 in connection with the former sexual assault charge and concluded at that time that the defendant was incompetent to stand trial. As a result, the defendant was confined in the Regional Center from 1976 until sometime early in 1979. During that period of about 3 years Dr. Woytassek saw the defendant on almost a daily basis. In 1979 Dr. Woytassek reported to the District Court in the previous case that he and the staff believed the defendant was competent to stand trial in that case. The defendant then left the Regional Center. In December 1980 Dr. Woytassek saw the defendant again when the defendant was readmitted to the Regional Center for evaluation regarding his competency to stand trial in this case. During the month of December 1980 Dr. Woytassek and the staff observed and examined the defendant. In Dr. Woytassek's opinion the defendant's mental condition was better than it had been when the defendant left the Regional Center in 1979. In Dr. Woytassek's opinion the defendant's

mental abilities were somewhat higher than those reflected by the IQ tests, and Dr. Woytassek's opinion was that the defendant had the mental capability to stand trial. The staff reports of the Regional Center doctors supported his opinion.

The defendant's counsel also testified at the competency hearing that he found it very difficult to communicate with the defendant in regard to the particular case and that, in his opinion, the defendant could not intelligently and knowingly waive any rights in a trial.

At the conclusion of the competency hearing the District Court found that the defendant was mentally competent to stand trial. Thereafter, on January 30, 1981, the defendant was arraigned and withdrew his previous plea of not guilty and entered a plea of guilty to the charge of sexual assault. After an extensive examination of the defendant by the court with respect to the defendant's knowledge and understanding of the plea, including extensive inquiries into the understanding and competence of the defendant, the District Court found that the defendant had voluntarily, knowingly, and intelligently entered his plea of guilty to count I only and adjudged him to be guilty as charged. Count II was dismissed. After a presentence investigation the defendant was sentenced.

The defendant contends on appeal that he was not competent to stand trial and that he was not competent to enter a plea of guilty, and that a different rule should be applied in determining mental competency to plead guilty than is applied in determining competency to stand trial.

The test of mental competency to stand trial is whether the defendant has the present capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense. *State v. Guatney,* 207 Neb. 501, 299 N.W.2d 538 (1980).

The question of competency to stand trial is one of fact to be determined by the court and the means employed in resolving the question are discretionary with the court. *State v. Crenshaw,* 189 Neb. 780, 205 N.W.2d 517 (1973); *State v. Guatney, supra.*

The determination of the finder of fact on the issue of competency will not be disturbed unless there is insufficient evidence to support the findings. *State v. Klatt,* 187 Neb. 274, 188 N.W.2d 821 (1971). Although the testimony was in conflict in the present case, the trial court saw and heard the witnesses and there was sufficient evidence to support the findings.

The defendant urges this court to adopt a separate and higher standard of competency to enter a plea of guilty than the standard of competency required to stand trial. To accept the defendant's argument would necessarily create a category of criminal defendants who were competent to stand trial but incompetent to plead guilty.

In the few decisions which have required a higher standard for pleading guilty, the only reason given to support the distinction is that in pleading guilty a defendant waives certain constitutional rights, while in standing trial he does not. That position assumes that a decision to waive or to exercise a constitutional right requires a different degree of competency depending upon what decision is made. It also assumes that a decision to stand trial does not involve any further decisions or possible waivers of constitutional rights, such as the decision of whether to be tried by a jury or the court or whether to testify or refuse to testify. The issue does not turn on whether a decision was made to waive rather than to exercise a constitutional right, but on whether the decision, whichever it was, was knowingly and voluntarily made.

This court has very recently held that the test of mental capacity to plead or stand trial is the same.

*Marteney v. State,* 210 Neb. 172, 313 N.W.2d 449 (1981). The majority of federal courts follows the same rule. See *Allard v. Helgemoe,* 572 F.2d 1 (1st Cir. 1978), *cert. denied* 439 U.S. 858, 99 S. Ct. 175, 58 L. Ed. 2d 166.

The defendant also contends that his sentence was excessive. The statutory penalty for first degree sexual assault is imprisonment for not less than 1 nor more than 50 years. The defendant was sentenced to not less than 6 nor more than 10 years' imprisonment. The defendant had a previous sexual assault record, was found to be a treatable mentally disordered sex offender, and the sentence was well within the statutory range. There was no abuse of discretion.

The judgment of the District Court is affirmed.

AFFIRMED.

WHITE and CAPORALE, JJ., concur in the result.