STATE of North Dakota, Plaintiff
and Appellee,

v.

Michael HEGER, Defendant
and Appellant.

Cr. Nos. 807, 817.

Supreme Court of North Dakota.

Dec. 1, 1982.

James N. Purdy, State's Atty., Ellendale, for plaintiff and appellee State of N.D.

Robin Huseby, of Sproul, Lenaburg, Fitzner & Walker, Valley City, for defendant and appellant.

VANDE WALLE, Justice.

Michael Heger appealed from judgments of conviction entered by the district court, Barnes County, for the crimes of murder, gross sexual imposition, and burglary. We affirm.

The sole issue presented to us on appeal is whether or not the trial court erred in ultimately finding the defendant, Michael Heger, competent to stand trial.

Heger's competency to stand trial was questioned almost immediately after criminal proceedings were instituted against him. As a result, three evidentiary hearings were held to determine his fitness to proceed to trial.

On April 19, 1979, four days after he was arrested, the county court at defense counsel's request ordered Heger to undergo a mental examination at the State Hospital. Dr. Carbone, superintendent of the North Dakota State Hospital, in a letter to the court dated May 1, 1979, gave the results of the examination and expressed the opinion that Michael Heger was incompetent to stand trial. The State challenged Dr. Carbone's opinion, and consequently a competency hearing was scheduled for June 12, 1979. At the hearing several doctors from the State Hospital, in addition to Dr. Carbone, testified that Heger was incompetent to stand trial. The State presented no ex-pert testimony of Heger's competency, and the county judge found Heger unfit for trial and remanded him to the custody of the State Hospital.

Heger remained at the State Hospital until October 14, 1980, when he was discharged to the Barnes County sheriff following the court's receipt of a letter from Dr. Rashid, clinical director at the State Hospital, informing the court that in the opinion of the State Hospital staff, Michael Heger was then competent to stand trial. This time defense counsel challenged the opinion, and a second competency hearing was scheduled for December 3, 1980. Once again several doctors from the State Hospital testified, but their testimony was that Heger was competent to stand trial;[1] defense counsel presented no expert medical testimony of Heger's incompetency. On the basis of evidence presented at the hearing and from his own personal examination of Heger, the county judge found Heger competent to stand trial.

In February 1981, defense counsel made a motion to the district court to overrule the county court's latest decision that Heger was competent, and in the alternative to order a psychiatric evaluation of Heger to be conducted by someone other than a member of the State Hospital staff. The court initially denied both motions but upon reconsideration granted the motion for an independent psychiatric evaluation.

Dr. Sharbo, a private practitioner and chief of psychiatry at the Neuropsychiatric Institute in Fargo, conducted the court-ordered independent mental examination of Heger. On the basis of his examination and the results of neuropsychological testing performed by Dr. Fischer, a neuropsychologist associated with Dr. Sharbo, Dr. Sharbo formed the opinion that Heger was incompetent to stand trial.

Upon receiving Dr. Sharbo's report on his evaluation of Heger, defense counsel moved the district court for another competency

---

1. It should be pointed out, however, that Dr. Carbone and some of his staff who testified at the first competency hearing no longer worked at the State Hospital; none of the State Hospital staff who testified at the first competency hearing testified at the second competency hearing.

hearing. The court granted the motion, and on October 6, 1981, the third, and final, competency hearing was held. Expert medical testimony was presented by both sides, with the trial judge conducting an informal examination of Heger at the conclusion of the hearing. Michael Heger was found competent by the trial judge and proceeded to trial the following day.

This is the first time a trial court's decision *following* a hearing on the issue of a defendant's fitness to proceed to trial has been questioned in this court. Among the jurisdictions which have considered the issue, there is no uniformity of opinion regarding such matters as the allocation of the burden of proof in a competency hearing, the standard of proof in a competency hearing, and the standard for reviewing a trial court's decision on competency. Consequently, we approach what is a difficult problem with more than the usual caution and thoughtfulness.

█ It is well established that a defendant cannot be tried for the commission of an offense if he is incompetent. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). A defendant is incompetent when he neither has (1) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," nor (2) "a rational as well as factual understanding of the proceedings against him." [2] *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

█ Once the issue of a defendant's competency to stand trial has been raised, a number of principles and procedures come into play to resolve the issue. At the out-

set, a defendant is presumed to be competent; [3] but if the trial judge has any reason to doubt a defendant's fitness to proceed, he may order him to have a psychiatric examination. Sec. 12.1–04–06, N.D.C.C. The results of the examination are to be reported to the court in writing and then distributed to the prosecutor and defense counsel. Sec. 12.1–04–07, N.D.C.C. Should there be a dispute concerning the findings of the report, the trial court must hold an evidentiary hearing to decide the defendant's competency. *State v. Storbakken,* 246 N.W.2d 78 (N.D.1976); Sec. 12.1–04–07, N.D.C.C. At the hearing, evidence regarding a defendant's fitness to stand trial may be presented in the form of lay observations and expert medical testimony. *State v. Fischer,* 231 N.W.2d 147 (N.D.1975). Furthermore, considering that the issue of a defendant's competency to stand trial is a legal question to be decided by the trier of fact [*United States v. Voice,* 627 F.2d 138 (8th Cir.1980); *State v. Quarrels,* 211 Neb. 204, 318 N.W.2d 76 (1982)], it is entirely appropriate for the trial judge to personally conduct an informal examination of the defendant and then to "rely, in part, on his own impressions, observations and conclusions" in deciding whether or not the defendant is competent. See *Fischer, supra,* 231 N.W.2d at 155.

Focusing our attention on the nature of the evidentiary hearing provided for in Section 12.1–04–07, N.D.C.C., we see that no provision is made for the allocation of a burden of proof on the issue of a defendant's competency. Our research of the point in question shows that it is generally settled who has the burden of proof but not at all settled what the standard of proof is.

**2.** This definition is essentially contained in Section 12.1–04–04, N.D.C.C., the North Dakota statutory prohibition against trying, convicting, or sentencing an incompetent defendant. It states:

"No person who, as a result of mental disease or defect, lacks capacity [(2)] to understand the proceedings against him or [(1)] to assist in his own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures."

The reason generally given for rules of this sort is that it would be unfair to require a person to

defend himself against criminal charges where he has neither the capacity to understand the proceedings against him nor the ability to assist counsel in his defense. See *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

**3.** This presumption fairly follows from the fact that the trial of a defendant will proceed normally upon the assumption that the defendant is competent unless the trial court has reason to doubt the defendant's fitness to proceed. See Section 12.1–04–06, N.D.C.C.

■ We agree with the majority of courts that the prosecution has the burden to establish a defendant's capacity to stand trial. See, e.g., *United States v. DiGilio,* 538 F.2d 972 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). Placing the burden on the State seems to conform best to the North Dakota procedure for determining competency where the defendant is initially presumed competent until the trial court has reason to doubt the defendant's competency. At that point, where the trial judge has reason to doubt the defendant's competency, it is logical, and fair, in view of the great injustice which would result if an incompetent person were forced to stand trial, to require the State to alleviate the court's doubt, if it can.

What the standard of proof should be in a competency hearing is a more difficult question. A few courts hold that the prosecution has the burden to show beyond a reasonable doubt the defendant's fitness to stand trial. *Jolley v. State,* 282 Md. 353, 384 A.2d 91 (Md.Ct.App.1978). But it appears the majority of courts that have considered the issue put the burden upon the prosecution to demonstrate the defendant's competency by a preponderance of the evidence only.[4]

■ In a criminal proceeding there is no question that the prosecution must prove each element of the criminal offense charged beyond a reasonable doubt. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). But, as the Third Circuit correctly points out in *DiGilio, supra,* competency to stand trial is not an element of a criminal offense. For that reason we believe it is inappropriate to require the State to show defendant's competency beyond a reasonable doubt. We see no reason to require the State to establish a defendant's competency by more than a preponderance of the evidence. Accordingly, we hold that once a defendant has

caused the trial court to doubt his fitness to proceed, the State must show by a preponderance of the evidence that he is competent to stand trial.

Next we decide what standard of review this court should use when considering whether or not a trial court has erred in making its finding on the issue of a defendant's fitness to stand trial.

■ Whether or not a defendant is competent to stand trial is a question of fact for the trial judge. *Voice, supra; United States v. Winn,* 577 F.2d 86 (9th Cir.1978); *State v. Quarrels, supra.* And the trial judge's finding on the issue of competency will not be set aside on review unless it is clearly erroneous. *Voice, supra; United States v. Glover,* 596 F.2d 857 (9th Cir. 1979); *United States v. Hayes,* 589 F.2d 811 (5th Cir.), *cert. denied* 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979); *United States v. Caldwell,* 543 F.2d 1333 (D.C.Cir. 1974), *cert. denied* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States ex rel. Bornholdt v. Ternullo,* 402 F.Supp. 374, fn. 4, at 377 (S.D.N.Y.1975). A large number of courts say that they will limit their review to an examination of whether or not the trial court abused its discretion in finding the defendant competent, e.g., *State v. Crenshaw,* 27 Wash.App. 326, 617 P.2d 1041 (1980). Others say that deference is to be accorded the trial court's decision that a defendant is fit to proceed. See *State v. Stewart,* 596 S.W.2d 758 (Mo.Ct.App.1980). And still others seem to say that their review will consist of an inquiry to see if adequate evidence exists to support the trial court's conclusion of competency. See *State v. Holm,* 322 N.W.2d 353 (Minn.1982). The difference between these standards of review and the "clearly erroneous" standard is more a difference in phraseology than a difference in substance. We adopt the "clearly erroneous" standard of review; but, however stated, under the facts of the present case, the result is the same.

4. *United States v. DiGilio,* 538 F.2d 972 (3d Cir.1976). See also *United States ex rel. Bornholdt v. Ternullo,* 402 F.Supp. 374 (S.D.N.Y. 1975); *People v. Carl,* 58 A.D.2d 948, 397 N.Y.

S.2d 193 (N.Y.App.Div.1977), *reversed on other grounds* 46 N.Y.2d 806, 413 N.Y.S.2d 916, 386 N.E.2d 828 (1978); *People v. Santos,* 43 A.D.2d 73, 349 N.Y.S.2d 439 (N.Y.App.Div.1973).

Bearing in mind that a defendant's fitness to stand trial is measured by his present capacity to understand the proceedings against him and to assist counsel in his own defense, we turn to an examination of the record to see whether or not the trial court's finding of competency was clearly erroneous.

Michael Heger is mentally retarded. The level of his mental retardation defined in terms of intelligence quotient (I.Q.) is generally agreed upon by medical experts on both sides. Before each of the three competency hearings, Heger was tested to determine his I.Q. All three testings showed his verbal I.Q. to be slightly lower than his performance I.Q. His full-scale I.Q., which is a function of verbal and performance I.Q., remained constant at 70. Dr. Sharbo testified that an I.Q. of 80 is at the lowest limit of normal intelligence, and that an I.Q. of 70 is at the upper limit of retardation. Dr. Fischer, who conducted the I.Q. testing on Heger for Dr. Sharbo, reported that Heger's basic reasoning skills were in the mild-to-borderline range of mental retardation, but that Heger had a deficiency in vocabulary skills below what would be expected of a person with his I.Q.

We here make the observation that being mentally retarded is neither a necessary nor sufficient condition for being found incompetent: (1) there are those who are incompetent to stand trial according to the standards set forth in *Dusky*, but are clearly not mentally retarded; and (2) there are those who are mentally retarded, but are competent to stand trial. The first proposition is fairly obvious; for example, a person of average intelligence who has lost all touch with reality would be mentally ill, not mentally retarded, and he would be incompetent to stand trial. The second proposition was testified to by Dr. Sharbo at the third, and last, competency hearing

when he denied that a person with Heger's level of retardation would necessarily be found incompetent to stand trial under the North Dakota competency standard.

At the third, and last, competency hearing, which is the only competency hearing we are concerned with in deciding whether or not the trial court erred in finding Heger competent, there was a definite conflict in medical testimony. Dr. Schmidt was of the opinion that Heger was competent, and Dr. Sharbo was of the opinion that Heger was incompetent.[5]

This dispute between the medical experts centers primarily upon the issue of Heger's ability to think abstractly. Dr. Sharbo explains abstract thought as "the ability to move from immediate concrete items to concepts. As an example, it's the ability to relate the chair and the table and consider them both furniture." It is Dr. Sharbo's position that Heger's ability to think abstractly, to grasp abstract concepts like "evidence," is so severely limited that it prevents him from being able to understand the proceedings against him and to assist counsel in his own defense. Dr. Schmidt, on the other hand, maintains that while it is true that Heger's ability to think abstractly is limited, this limitation would not affect Heger's capacity to understand the proceedings against him and to assist in his own defense so long as the complex concepts which Heger might have difficulty understanding are explained to him in simple language.

It is significant to note that Dr. Fischer's evaluation of Heger, which Dr. Sharbo relied upon in forming his opinion on Heger's competency, appears to be fairly sympathetic with Dr. Schmidt's evaluation. Dr. Fischer states:

"I think the patient's specific disability in word knowledge and word retention

---

5. We take note that Dr. Schmidt did not examine Heger just prior to the third competency hearing as did Dr. Sharbo and Dr. Fischer. Although this is certainly a factor to be considered by the trial judge in weighing the evidence, it becomes less significant when it is also brought to notice that the testing performed on Heger by Dr. Sharbo and Dr. Fischer produced basically the same objective data that the State Hospital's testing produced. The difference of opinion between Dr. Sharbo and Dr. Schmidt was essentially the result of a difference in interpretation of the objective data.

might explain why there was a difference of opinion with regard to this patient's mental capacity between the examiners under Dr. Carbone who first saw him and the examiners who evaluated him after he had been in the state hospital for an extended period of time. I think it is possible that when one first converses with him you are struck by his lack of understanding and his *apparent* incapacity to grasp concepts. Only on further analysis and evaluation do you start to see that *it is not that he cannot understand concepts* but that he either doesn't know the meaning of the words you are using or he has forgotten their meanings and needs to be reminded. Therefore, on first impression one might think his comprehension is defective beyond his intellectual level but on further analysis one would realize that he is comprehending at a mildly retarded level but just has a specific vocabulary problem....

.    .    .    .    .

"Therefore, although the patient can reason effectively at the level of a mildly retarded person and *can understand concepts* and was even able to hold a job without difficulty, nevertheless, *unless one converses with this man at the vocabulary level of a 6 year old, you are not going to be able to be assured that he is comprehending what is going on because of his dysnomic or word finding difficulty."* [6] [Emphasis added.]

By stating that *"unless one converses with this man at the vocabulary level of a 6 year old, you are not going to be assured that he is comprehending what is going on,"* Dr. Fischer clearly implies, whether he wishes it

6. However, Dr. Fischer concludes his report to Dr. Sharbo with the statement that,
   "[E]ven with training in vocabulary he [Heger] is going to have a significant impairment in his ability to communicate with an attorney, with a jury, with a judge, etc., in order to aid in his own defense and make reasonable decisions that affect the outcome of his trial."

7. For example:
   "BY THE COURT:

   .    .    .    .    .

or not, that Heger *is* capable of understanding the proceedings against him *if* they are explained to him in very basic, simple language.

An experienced criminal trial lawyer who taught special education before attending law school testified that in his opinion Heger was not competent to stand trial. He based his opinion, which was the result of several interviews with Heger, upon his observation that Heger could not understand certain legal concepts, concepts which he believed Heger must comprehend before he would be able to understand the legal proceedings against him and assist counsel in his own defense.

■ We believe a trial attorney's opinion regarding a defendant's ability to understand legal concepts, which are part and parcel of the legal proceedings against him, and to assist counsel in his own defense should be given due consideration by the trial judge in making his decision about a defendant's competency to stand trial. However, just as expert medical testimony is not controlling in the court's determination of competency, neither is expert legal testimony controlling.

■ The trial judge was faced with conflicting testimony; he conducted his own examination of Heger in an effort to determine whether Heger could or could not understand difficult legal concepts if they were explained to him in simple language. Many of Heger's responses to the trial judge's questioning showed that Heger had the ability to grasp abstract legal concepts when they were explained to him in simple language.[7]

   "Q. Michael, have you been able to understand basically the questions I have been asking you?
   "A. Yes.
   "Q. Michael, *do you know what it means when I say you have the right to remain silent?*
   "A. No.
   "Q. Do you know what it means if I say to you when I ask you a question you don't have to answer?
   "A. Yes."

There is no question that the evidence shows Heger's ability to think abstractly is impaired; however, this fact in itself does not require a court to conclude that a defendant is unfit to stand trial. We completely agree with the Ninth Circuit Court's assertion in *United States v. Glover, supra,* 596 F.2d at 867:

> "The fact that a defendant might not understand the proceedings unless they are explained to him in simple language would put an additional burden upon counsel, but certainly does not establish that the defendant is incompetent to stand trial."

It is extremely difficult for trial courts to reach a decision on a defendant's competency to stand trial if the defendant is neither manifestly unable to understand the proceedings against him and to assist in his own defense nor manifestly able to understand the proceedings against him and to assist in his own defense. Competency is not something a person wears like a coat.[8]

Although expert medical testimony is immeasurably helpful to the court in making its decision on a defendant's fitness to stand trial, where there is a conflict in the expert medical testimony, the trial judge's personal observations of the defendant become invaluable to that decision.

Where the trial judge, as in this case, (1) heard extensive expert testimony both for and against a finding of competency, (2) heard testimony from lay persons regarding the defendant's "normal" daily behavior in their presence, and (3) personally conducted a thoughtful, informal examination of the defendant, we cannot say that his finding that the State had shown by at least a preponderance of the evidence that Michael Heger was competent to stand trial was clearly erroneous.

We affirm the judgments of conviction.

---

**8.** Although Dr. Sharbo testified that Heger was competent, he, too, recognized in Heger's case that it was not easy to decide the issue of his fitness to stand trial. Dr. Sharbo testified that Heger was an unusual case, and in response to the question why this was so, he answered:

ERICKSTAD, C.J., and SAND and PEDERSON, JJ., and BURT L. WILSON, District Judge, concur.

WILSON, District Judge, sitting in place of PAULSON, J., disqualified.

"Because of the subtlety of the findings and the subtlety of the reasons for his not being competent. Generally, these determinations are pretty easy to make. They are black or white. And in this case is gray."