THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARRIE JEAN HERAL, Defendant-Appellant.

(No. 73-284;

Second District (2nd Division)—February 7, 1975.

Ralph Ruebner and Adam Lutynski, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant was indicted on August 29, 1972, for murder by suffocation of a 14-month-old child. Pursuant to motion, a hearing on defendant's competency to stand trial was held on September 7, 1972, at which hearing defendant was found competent to stand trial. Pursuant to plea negotiations, defendant plead guilty to murder on December 7, 1972, and was sentenced by the Circuit Court of Winnebago County to 14 to 20 years in prison, said sentence having been agreed upon in the plea negotiations. Defendant now appeals on the grounds that the trial court improperly accepted her guilty plea.

On August 2, 1972, the defendant, Carrie Jean Heral, age 19, went to see Chaplain Frank Mayer at the Rockford Memorial Hospital and told him that she was involved in the death of 14-month-old Rodney Collison. The chaplain got Miss Heral's permission to call the Rockford Police Department. Subsequently, two policewomen came to the hospital, informed Miss Heral of her constitutional rights, and took her to the police station where she gave a statement indicating that she had suffocated the Collison child in his bed at approximately 1:30 A.M. on August 2, 1972.

Defendant had a prior history of mental problems, involving, among other things, several attempted suicides. While in the county jail subsequent to her arrest in the matter at hand, defendant twice attempted suicide.

Psychiatric testimony adduced at the competency hearing on September 7, 1972, indicated that Miss Heral did have a background of psychological problems, but that she was competent to stand trial. Subsequently, Miss Heral plead guilty to murder.

The issues on appeal are:
  I. Did the trial court commit reversible error in accepting defendant's guilty plea without first determining that she was competent to plead guilty?
  II. Did the trial court adequately inform the defendant of the nature of the charge against her in accepting her guilty plea?
  III. Did the trial court commit reversible error in not informing the defendant of the affirmative defense of insanity and determining that she understood it, and voluntarily and knowingly waived it, before accepting her guilty plea?

## I.

■■ On appeal, defendant argues that the fact that she was found competent to stand trial does not mean that she was also competent to plead guilty. A finding of fitness to stand trial indicates that the defendant is able to understand the nature and purpose of the proceedings against him and to assist in his defense. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1.) Defendant argues that fitness to enter a guilty plea requires a higher standard of competence because "pleading guilty is a higher form of activity than standing understandingly mute." Defendant is mistaken in interpreting competence to stand trial to mean simply that defendant is capable of being "understandingly mute." Competence to stand trial also involves a defendant's being capable of assisting in his defense, an active role rather than simply a passive one.

In *Westbrook v. Arizona*, 384 U.S. 150, 16 L.Ed.2d 429 86 S.Ct. 1320, which defendant cites as authority for her argument here, the United States Supreme Court held that a determination that the accused was fit to stand trial was not also a determination that he was capable of waiving his right to counsel and conducting his own defense. That case did not involve a defendant who plead guilty, but one who plead not guilty and conducted his own defense. In the instant case, the defendant was represented by counsel throughout the proceedings against her. The constitutional right *Westbrook* was concerned with, the right to counsel, was taken full advantage of in the present case. In addition, there is no indication in the record that defense counsel here did not give his client full and complete representation.

In *Withers v. People*, 23 Ill.2d 131, the defendant argued that he was not found competent at the time he entered his guilty pleas. Holding against the defendant, the supreme court applied the test for fitness to stand trial, holding at page 135 that "[i]f the defendant does understand the nature and object of the charges against him and can, in co-operation with his counsel, conduct his defense in a rational and reasonable manner, then he is mentally competent to stand trial although upon other subjects his mind may be unsound." Defendant here does not contend that there was error in finding her competent to stand trial. Thus, defendant's competence to plead guilty was established.

*People v. McElroy*, 125 Ill.App.2d 237, 243, states: "While a defendant may possess a sociopathic personality and suffer from psychological and social disturbances, these circumstances without more are not sufficient to raise a bona fide doubt as to his competence." *McElroy* also treated the test for competence at a guilty plea the same as the test for competence to stand trial.

## II.

Defendant claims, secondly, that the trial judge committed reversible error in that he did not determine that she understood the nature of the charge against her in violation of Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, par. 402). She bases this argument on the fact that at the guilty plea the judge did not inquire into whether defendant had the requisite mental state to be guilty of murder, *i.e.*, intent to kill or do great bodily harm. (Ill. Rev. Stat. 1971, ch. 38, par. 9—1.) The judge asked the defendant if she understood that she was being charged with murder in that she suffocated the Collison child and the defendant indicated that she did understand.

■■ Rule 402 requires only substantial compliance with its provisions. "Also, the entire record may be considered in determining whether or not there was an understanding by the accused of the nature of the charge." (*People v. Krantz* (1974), 58 Ill.2d 187, 192, 317 N.E.2d 559, 562.) The supreme court in *Krantz* cited with approval *People v. Mims,* 42 Ill.2d 441, which affirmed a guilty plea conviction though the trial court made no formal inquiry as to whether the defendant understood the nature of the charge. In *Mims,* the supreme court said at page 444: "The recital of the anticipated testimony of the witnesses for the prosecution, in the presence of the defendant and his attorneys, without protest and indeed with acquiescence, demonstrates to our satisfaction that the defendant's conduct falls within the charge to which he pleaded guilty." In the instant case, the assistant State's attorney explained in depth what the evidence for the People would show. Miss Heral specifically indicated to the trial court that she had no objection to the prosecutor's statement.

The trial court in *Krantz* simply asked the defendant if he understood that he was being charged with forgery. The trial court in *Mims* did not even ask the defendant if he understood the nature of the charge. In the case at hand, the trial court did ask Miss Heral if she understood that she was being charged with murder in that she killed Rodney Collison by suffocation. The trial court was more diligent here than in either of the above two cases. Looking at the entire record, which included a detailed statement of what the evidence would be at trial, the defendant here was adequately informed of the nature of the charge against her.

■■ Neither Rule 402 nor any constitutional provision "* * * requires each element of an offense be explained to a defendant. Rather, in our view, the record as a whole should disclose that the defendant has been advised of the 'essence, general character, kind or sort' of the offense to the extent that the particular defendant before the court decid-

ing on the options available to him has a common understanding of the nature of the charge." (*People v. Diaz* (1973), 15 Ill.App.3d 280, 283.) The guilty plea in *Diaz* was upheld even though the defendant there indicated his understanding through an interpreter (he only spoke Spanish) and though the trial court did not personally and directly inform the defendant of the unreasonable self-defense aspect of the voluntary manslaughter charge to which he was pleading guilty. "The necessary information and the defendant's understanding where established by the whole record, however, which included the State's Attorney's colloquy with the court in the presence of the defendant and interpreted to him, the statement of the plea agreement, the paraphrasing of the indictment, defendant's response that he understood the value of the charge, and defendant's own statement about his lack of knowledge of the law in regard to defending himself at the time he committed the act." (*Diaz*, at 284.) The record in the instant case indicates the presence of all the above elements except for the interpreter in *Diaz* and the last element concerning lack of knowledge. In addition, the record here contains testimony of two psychiatrists that Miss Heral understood the nature of the charges against her.

In *Krantz*, where the trial court simply asked the defendant if he understood that he was charged with forgery and the defendant indicated understanding, the supreme court held at page 193: " '[T]he remarks and advice of the court must be read in a practical and realistic manner. The essentials have been complied with if an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule' (*People v. Doyle*, 20 Ill.2d 163, 167; * * *.)" The case at hand does not even better than the "ordinary person" standard mentioned above. There is uncontroverted evidence in the record that this specific defendant, Miss Heral, understood the nature of the charges against her.

### III.

Defendant's third allegation of reversible error is the failure of the trial court to inform the defendant of a possible insanity defense to the murder charge before accepting her guilty plea. There is no evidence in the record which indicates that Miss Heral was unaware of a possible insanity defense. However, there is some evidence in the record which indicates that she was aware of such a defense.

■■ At the guilty plea, the State's attorney offered several documents into evidence, among them psychiatrists' reports, one of which indicated possible insanity by the defendant at the time of the killing, and others which referred to such a possibility but discounted it. The trial court

asked defense counsel, Mr. Vella, if he was familiar with these documents.

"Mr. Vella: Your Honor, I received copies of the exhibits at a prior time, and I have gone over all of them and I have copies in my file. I have no objection to their being admitted in evidence at this time.

The Court: All right. You have discussed the contents of these documents with your client?

Mr. Vella: Your Honor, my client is aware of all these documents. She is aware of the result of these documents.

The Court: All right. Now, is there any objection that you or your client has to the introduction of these documents and the Court considering them?

Mr. Vella: No objection whatsoever, Your Honor."

The record thus indicates that Miss Heral knew what was in the psychiatrists' reports and her counsel also knew. It is logical to presume from this that the possibility of an insanity defense was made known to the defendant but she discounted it. Certainly she must have had the advice of counsel on the matter. In any event, incompetence of counsel is not raised here as it undoubtedly would have been had counsel not consulted with his client regarding an insanity defense.

Defendant argues in reference to an insanity defense that: "Until a defendant declares an understanding of that fact and waives the possibility of pursuing the affirmative defense a trial court may not accept a guilty plea." No authority is cited for that argument, and assuming, arguendo, its validity, referring to the guilty plea proceedings quoted above, it seems defendant did understand and waive the assertion of an insanity defense.

Given the directive in *Krantz* to consider the entire record, there is evidence which indicates that defendant was aware of a possible insanity defense. For this reason, it is not necessary that we decide whether, where applicable, a defendant pleading guilty to murder must be informed by the court of a possible insanity defense.

We hold that for the reasons given, the trial court did not err in accepting defendant's guilty plea.

Judgment affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.