2003 WY 4

**Sargent K. MAJOR, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–233.

Supreme Court of Wyoming.

Jan. 28, 2004.

Representing Appellant: Diane E. Courselle, Director, Wyoming Defender Aid Program; Lindsay Hoyt, Student Director; and K. Adam Christian Jr., Student Intern.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Paul S. Rehurek, Deputy Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and YOUNG, D.J.

YOUNG, District Judge.

[¶ 1] Sargent Major (Appellant) contends that his plea of nolo contendere to one count of kidnapping should have been rejected by the district court because it was not knowingly and voluntarily given. He also argues that the district court erred in denying his *pro se* motion to withdraw his plea. We affirm.

## ISSUES

[¶ 2] Appellant states the issues on appeal as:

Did the district court err in accepting Mr. Major's no contest plea to the kidnapping charge when the record did not demonstrate that the plea was knowing and voluntary?

Did the district court abuse its discretion in denying Mr. Major's presentence motion to withdraw his guilty [sic] plea?

The State's statement of the issues is substantively identical to Appellant's.

## FACTS

[¶ 3] On December 4, 2000, Appellant and a companion escaped from the Wyoming Honor Conservation Camp in Weston County. Three days later, the escapees entered the garage of an isolated home as the elderly woman who resided there returned. After taking her credit cards and some cash, Appellant and his companion forced her to accompany them in her car on a cross-country trip. The group drove from Wyoming to Lansing, Michigan, where Appellant's companion went his own way. Thereafter, Appellant and the victim began to head back west. They were stopped in Junction City, Kansas, where Appellant was arrested and the victim, who was not physically harmed during the ordeal, was freed.

[¶ 4] An Information dated December 10, 2000, charged Appellant with one count of escape in violation of Wyo. Stat. Ann. § 6–5–206(a) (LexisNexis 2003). A second Information was filed on January 25, 2001, charging Appellant with five felonies: (1) aggravated burglary in violation of Wyo. Stat. Ann. § 6–3–301(a) and (c)(i) (LexisNexis 2003); (2) larceny in violation of Wyo. Stat. Ann. § 6–3–402(a) and (c)(i) (LexisNexis 2003); (3) aggravated robbery in violation of Wyo. Stat. Ann. § 6–2–401(a)(ii) and (c)(ii) (LexisNexis 2003); (4) kidnapping in violation of Wyo. Stat. Ann. § 6–2–201(a)(ii) or (iii) and (d) (LexisNexis 2003); and (5) kidnapping in violation of Wyo. Stat. Ann. § 6–2–201(a)(i), (ii) or (iii) and (d). At arraignment, Appellant pleaded not guilty and not guilty by reason of mental illness or deficiency to all charges.

[¶ 5] At the request of Appellant's appointed counsel, several psychiatric examinations were performed on Appellant. A forensic psychologist, who was designated by the defense, concluded that Appellant suffered from some "relatively mild neuro-psychological deficits" but "this mental illness did not interfere with his capacity to appreciate the wrongfulness of his conduct at the time of the alleged criminal conduct." The evaluation concluded that Appellant was competent to stand trial.

[¶ 6] As the proceedings progressed toward trial, Appellant began to express complaints about the performance of his appointed counsel. Appellant directed his complaints to the Wyoming State Bar and the district court. He requested removal of counsel and the appointment of a substitute.

On March 18, 2002, the district court held an *ex parte* hearing with Appellant and his counsel. Appellant had expressed his opposition to a defense based upon a claim of mental illness or deficiency. Defense counsel responded that based upon his contacts with Appellant and the facts of the case, he thought it was the most viable defense.[1] Next, Appellant complained that defense counsel did not communicate with him. At the time, Appellant was in the Wyoming State Penitentiary serving the sentence that was the basis for his presence in the Honor Camp at the time of his escape. Appellant had also spent significant time at the state hospital undergoing a mental health evaluation. Defense counsel cited both of these factors as reasons for limited visitations with Appellant. However, he also noted that he had contacted Appellant by phone and in person, and that Appellant was misrepresenting the frequency of the contacts. During the discussion of this matter, it became apparent that part of the communication problem related to actions taken by personnel at the penitentiary. The court directed the State to intervene and help alleviate some of the conditions about which Appellant was complaining. Appellant then complained that his counsel had a conflict of interest because counsel had a relationship with the victim. Defense counsel explained that he had known the victim's late husband, who had been a prosecutor in Weston County for many years. Counsel had noted that he met the victim only once at a conference many years ago. He indicated that his passing acquaintance with the victim had worked to the defense's advantage since the victim consented to an interview.

[¶ 7] Appellant's final, and main, complaint was that defense counsel had failed to investigate a potential defense that he wanted to pursue. Specifically, he insisted that the victim was not kidnapped because she had accompanied him voluntarily. Appellant contended that there were various witnesses[2] in Michigan who could confirm that the victim had several opportunities to escape or to inform third parties that she was being held against her will, but she never did either. Counsel countered that to the extent he had been able to locate any of the witnesses, they simply did not support Appellant's story. Counsel also noted that the victim completely denied Appellant's allegations and he just did not believe Appellant was advancing a plausible defense. At that point in the hearing, Appellant informed the court that he thought his counsel was a good lawyer, that he did not want him replaced, and that all he really wanted was for the witnesses he had identified to be contacted. Defense counsel replied that he would attempt to do so, though he was not optimistic about locating them or that they would support Appellant's position. After hearing all of this, the district court concluded that it would not allow defense counsel to withdraw absent a competent replacement. Appellant concurred in the decision noting that his preference was to retain his current counsel.

[¶ 8] Eleven days later, a change of plea hearing was held. Appellant appeared and entered a plea of guilty to the escape charge. After the district court accepted the plea, Appellant complained about his attorney and requested a new one to handle the remaining charges against him. The crux of Appellant's complaint was that counsel was not going to call the witnesses from Michigan to testify at trial. Defense counsel explained that he could not locate some of the witnesses and those that he had found either could not remember Appellant or their stories did not agree with Appellant's. The court noted that Appellant had said he wanted to retain defense counsel at the March 18 hearing and that there was no reason to allow a change of counsel at such a late date just four days before the scheduled trial on April 1. Accordingly, the court denied Appellant's request for new counsel.

[¶ 9] After a short discussion with Appellant about the consequences of self-represen-

---

1. The mental illness/deficiency defense was withdrawn at a pretrial conference.

2. The potential witnesses cited by Appellant included a checkout clerk at a grocery store, an employee at a pizza shop, and two police officers who apparently contacted the Appellant in his motel room while inquiring about the occupants of an adjoining room.

tation, the court asked if there was anything else, at which point Appellant replied, "Yeah. How can I get all this mess settled now, right here right now?" The hearing was recessed so that Appellant could consult with counsel. When the hearing resumed, the parties announced that a plea agreement had been reached. In exchange for a no contest plea to a single count of kidnapping, the State agreed to dismiss the other four pending counts against Appellant.[3] After reviewing the proposed plea agreement, the court questioned Appellant on whether he understood the agreement and the attendant consequences. Appellant repeatedly insisted that he understood the plea and that it was what he wanted to do. The district court noted that the plea was being made with a complete understanding by Appellant of the pending charges and the attendant penalties, along with the rights that were being waived by making the plea. The court then accepted the no contest plea.

[¶ 10] Appellant's sentencing hearing commenced on August 21, 2002. Just prior to the hearing, Appellant presented to the court and counsel a *pro se* motion to withdraw his no contest plea on the kidnapping charge. The sole basis of the motion was a contention by Appellant that he had been denied his constitutional right to adequate legal representation. The crux of Appellant's motion was the allegation that defense counsel had failed to develop a defense based on the existence of exculpatory witnesses identified by Appellant. When the court asked Appellant if he wanted to elaborate on his motion, he declined saying that the motion was self-explanatory. After hearing from the State, the district court concluded that Appellant had received adequate representation, and that there was no fair or just reason to allow withdrawal of the plea. The court proceeded to sentence Appellant, who has now brought this appeal challenging the validity of his no contest plea to kidnapping.

## STANDARD OF REVIEW

[¶ 11] For purposes of appellate review, a nolo contendere plea is functionally equivalent to a guilty plea. *Becker v. State,* 2002 WY 126, ¶ 11, 53 P.3d 94, ¶ 11 (Wyo. 2002) (citing *Ochoa v. State,* 848 P.2d 1359, 1361 (Wyo.1993)). A guilty plea must be made knowingly and voluntarily. *Id.* (quoting *McCarty v. State,* 883 P.2d 367, 372 (Wyo.1994) and *Parke v. Raley,* 506 U.S. 20, 28, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992)). Whether or not a plea was knowing and voluntary is determined by an analysis within the context of W.R.Cr.P. 11:

> W.R.Cr.P. 11(d) requires a district court to assure that a plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The purpose of this rule is to allow the judge to determine whether the defendant entered the plea voluntarily and with an understanding of the consequences of the plea. *Smallwood v. State,* 748 P.2d 1141, 1143 (Wyo.1988). This court looks to the totality of the circumstances to determine the voluntariness of a plea. *Reyna v. State,* 2001 WY 105, ¶ 9, 33 P.3d 1129, ¶ 9 (Wyo. 2001). The well defined standard for determining whether a plea was knowing and voluntary provides:

> > "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes)."

*Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)); *see also State v. McDermott,* 962 P.2d 136, 139 (Wyo.1998).

---

3. The kidnapping count subject to the plea was also amended to reflect the fact that the victim had been released "substantially unharmed."

*See* Wyo. Stat. Ann. § 6–2–201(c) (LexisNexis 2003). This reduced the potential maximum penalty from life to twenty years.

*Schade v. State,* 2002 WY 133, ¶ 9, 53 P.3d 551, ¶ 9 (Wyo.2002).

[¶ 12] Pursuant to W.R.Cr.P. 32(d), if a motion for withdrawal of a guilty plea is made prior to the imposition of sentence, then the court may permit withdrawal upon a showing by the defendant of any fair and just reason. *Frame v. State,* 2001 WY 72, ¶ 7, 29 P.3d 86, ¶ 7 (Wyo.2001). A defendant does not possess an absolute right to withdraw his plea before sentence is imposed and where the requirements of W.R.Cr.P. 11 have been complied with and the defendant entered into the plea knowingly and voluntarily, the district court's decision to deny a motion to withdraw is within its discretion. *Id.* (citing *Burdine v. State,* 974 P.2d 927, 929–30 (Wyo.1999)).

> In deciding whether or not a trial court abused its discretion, this court must "determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Burton v. State,* 2002 WY 71, ¶ 44, 46 P.3d 309, ¶ 44 (Wyo.2002) (citing *Cook v. State,* 7 P.3d 53, 58–59 (Wyo.2000) and *Vaughn v. State,* 962 P.2d 149, 152 (Wyo. 1998)).

*Herrera v. State,* 2003 WY 25, ¶ 10, 64 P.3d 724, ¶ 10 (Wyo.2003).

[¶ 13] In *Frame,* we set forth seven factors that we identified as pertinent to the exercise of a trial court's discretion in deciding whether to grant a motion to withdraw a guilty plea: (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. *Frame,* ¶ 7 (citing *United States v. Black,* 201 F.3d 1296, 1299–1300 (10th Cir.2000) and 3 Charles Alan Wright, Federal Practice and Procedure: Criminal 2d § 538 (1982 and Supp.2001)); *see also Doles v. State,* 2002 WY 146, ¶¶ 11–12, 55 P.3d 29, ¶¶ 11–12 (Wyo. 2002). The State contends that the factors set out in *Frame* and *Doles* are considered only in situations where the defendant is claiming that ineffective assistance of counsel resulted in a coerced guilty plea. In other situations, such as here, the State suggests that review should be limited to a determination of whether a plausible, just, and fair reason was offered for the plea withdrawal and whether a knowing and voluntary plea was entered in compliance with Rule 11. Appellant counters that nothing in our decisions in *Frame* and *Doles* justifies such a narrow interpretation, and that the factors simply provide guidance for determining whether a fair and just reason to withdraw a plea has been presented.

[¶ 14] Appellant is correct. Our intention in setting out the list of factors in *Frame* was to provide guidance to the trial courts in making the determination of whether a defendant has presented a fair and just reason in support of the motion to withdraw his guilty plea. *Frame,* ¶ 7 ("Seven factors have been suggested as pertinent to the exercise of the [trial] court's discretion."). The factors were also intended to assist us in reviewing the district court's decision. There is nothing in either *Frame* or *Doles* that limits consideration of these factors to a particular factual scenario. The factors may be applied whenever a motion to withdraw a guilty plea prior to sentencing is made. We emphasize, however, that the factors were offered in *Frame* as a guide to the considerations that may be relevant in determining a motion to withdraw and consideration on the record of each specific factor by the court is not mandatory.[4] No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal. *Doles,* ¶ 13.

## DISCUSSION

[¶ 15] In his first issue, Appellant claims that his plea was neither knowing nor voluntary. Appellant stresses two fac-

---

4. When making an argument in favor of a motion to withdraw a plea before the district court, however, it would be to the defendant's advantage to present any arguments relating to these specific factors, or any others that may arise, which favor granting the motion.

tors in support of his contention that his plea was infirm: (1) his mental illness and (2) his contentious relationship with defense counsel. With respect to his mental condition, Appellant contends that the district court failed to take into account that it may have affected his ability to understand the proceedings. Specifically, Appellant points to his memory problems, which were noted in the psychological evaluations. He insists that the fact that he was competent to stand trial was not dispositive of whether his plea was voluntary and knowing. Appellant contends that his obvious mental impairments should have put the court on notice that there were questions concerning his ability to plead knowingly and voluntarily. He complains that the trial court made no effort to accommodate or treat with solicitude his mental impairment.

[¶ 16] In making his arguments, Appellant acknowledges that the district court complied with the requirements of Rule 11. However, Appellant contends that the compliance was strictly technical and the spirit of the rule was not adhered to. At the beginning of the hearing when Appellant offered his no contest plea to kidnapping, Appellant pleaded guilty to the escape charge. Under Rule 11, advisements must be given to the defendant on the rights he possesses including the right to counsel, to persist in a not guilty plea, and to a jury trial, among others. W.R.Cr.P. 11(b)(2)-(5). If the court has already advised the defendant of his rights on the record and in the presence of counsel, then the court does not have to repeat the advisements. W.R.Cr.P. 11(b). Appellant received those advisements during the plea colloquy on the escape charge. He complains that while the court was not technically required to give the advisements again during the plea colloquy on the kidnapping charge, the court should have done so in light of his mental impairment and related memory problems. The failure to do so deprived the no contest plea on the kidnapping charge of voluntariness and left it impossible to say that Appellant had given the plea knowledgeably. In short, Appellant contends that a prior determination that he was competent to plead on the escape charge did not automatically render his plea on the kidnapping charge knowing and voluntary.

[¶ 17] Appellant also cites the contentious nature of his relationship with defense counsel as a basis for concluding that his plea was not voluntary. He claims that he was under coercive pressure to plead out on the kidnapping charge because the lack of communication with his counsel left him in a position where there was no meaningful choice but to accept the plea agreement. Appellant alleges that defense counsel effectively pressured him into pleading because defense counsel: (1) did not adequately investigate the case, especially Appellant's claims that there were witnesses who would verify his contention that the victim had accompanied and remained with him voluntarily; (2) was not ready for trial; (3) did not communicate with Appellant; (4) expressed a desire not to represent Appellant; and (5) was more concerned with protecting his own professional interests than with protecting Appellant's right to a fair proceeding. According to Appellant, these problems with defense counsel's representation "snowballed" into an involuntary plea.

[¶ 18] We begin with a review of the plea proceedings. The hearing was originally scheduled for the purpose of Appellant changing his plea on the escape charge to guilty. The district court gave Appellant the extended advisement on his rights and the penalties associated with the escape charge as required by Rule 11. Appellant entered his guilty plea, and a factual basis was supplied for the plea. At that point, the court mentioned that trial was scheduled to commence in four days on the remaining charges. Appellant interjected a request for new counsel for the trial. The basis of Appellant's request was his frustration with what he perceived as defense counsel's failure to adequately pursue a defense based upon the theory that the victim had voluntarily accompanied him. Defense counsel responded with a detailed description of his investigation of the witnesses cited by Appellant and explained that those who could be located did not support Appellant's theory. The district court denied the request for new counsel citing the proximity of trial. A discussion arose about the possibility of self-representation with the district court informing Appel-

lant of his right to do so but also pointing out the drawbacks to that course of action. It is at this point when Appellant inquired into the possibility of pleading out and avoiding trial:

> THE COURT: ... Anything else that you would like to address?
>
> THE DEFENDANT: Yeah. How can I get all this mess settled now, right here right now?
>
> THE COURT: Well, there isn't really a way to get it settled and we need to have a trial. The only way to settle it would be if there's some offer, if there's some offer that the State made that you wanted to accept. They're not trying to force you to accept it. As you will recall, I told you earlier if you want to plead not guilty, that is your right to stick with a not guilty plea.

After a discussion about whether Appellant would be able to return to the penitentiary that day if he pleaded, the court ordered a break to allow Appellant time to consult with his attorney:

> THE COURT: Well, let's take a break right at this moment and you can discuss the issue with your attorney, and then he'll come and get me and we'll deal with whatever is left.
>
> THE DEFENDANT: Well, I'm willing to plead to whatever you guys want. Couple lifes, three lifes. Whatever. Don't matter anymore.
>
> THE COURT: Well, I want you to thoroughly discuss it with your attorney and—
>
> THE DEFENDANT: It's ridiculous.
>
> THE COURT: We'll be in recess.

After a twenty-eight minute recess, the parties returned to court:

> THE COURT: ... Mr. Major, have you discussed this with your attorney now?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: And what do you want to do?
>
> THE DEFENDANT: Huh?
>
> THE COURT: What do you want to do?
>
> THE DEFENDANT: Just give me the time. Whatever you guys are going to give me. I don't care.

> [DEFENSE COUNSEL]: Your Honor, Mr. Major has advised me that he would agree to accept the recommendation, the offer of the State which was that in exchange for a—that they would dismiss—he'd plead to the kidnapping charge which alleges that she was returned unharmed prior to trial, which therefore carries a maximum of 20 years, and that they would dismiss the other counts in that Information. And Mr. Majors [sic] has advised me that he would offer a plea of no contest to the kidnapping.
>
> Is that correct?
>
> THE DEFENDANT: Yeah. Sure. Whatever. Sure. Whatever.
>
> THE COURT: Are we talking amending Count IV then, the unlawful confinement? Or would it be Count V, the unlawful removal count in—
>
> [PROSECUTOR]: I guess the State's—it would be Count V, Judge.
>
> THE COURT: All right.
>
> Mr. Major, the offer then by the State is that they would dismiss Counts I, II, III and IV for your plea to the kidnapping charge in Count V, except that they are amending the charge in Count V to allege that you—or that—yes, that you did release the victim unharmed in a safe place prior to trial. The effect of the change in Count V reduces the maximum penalty from life imprisonment to a maximum of 20 years.
>
> Is that your understanding?
>
> THE DEFENDANT: Yeah. Sure. Whatever.

After explaining the allegations contained within the amended charge and the penalties attached thereto, the court inquired into Appellant's understanding and intention:

> THE COURT: ... Do you feel you understand the charge in Count V as it's now amended?
>
> THE DEFENDANT: I understand perfectly.
>
> THE COURT: Pardon?
>
> THE DEFENDANT: I understand it all.
>
> THE COURT: Do you feel you understand the possibly [sic] penalties?

THE DEFENDANT: Yep.

THE COURT: Do you have any questions at this time?

THE DEFENDANT: Nope.

THE COURT: All right. Are you ready at this time to enter your plea to the amended charge in Count V?

THE DEFENDANT: Yep.

THE COURT: Would you please stand.

THE DEFENDANT: Stand up? I get f——— if I stand up now?

THE COURT: To the charge as amended in Count V that on or about December 4, 2000, you did remove another, [the victim], from her place of residence or from the vicinity where she was at the time of removal, with intent to hold her as a shield or hostage, facilitate the commission of a felony, or terrorize her, and you did release her substantially unharmed in a safe place prior to trial, in violation of Wyoming Statute Section 6–2–201(a)(i), (ii) or (iii) what is your plea?

THE DEFENDANT: What? No contest.

THE COURT: You want to enter a no contest plea?

THE DEFENDANT: I'm not going to tell you I did it.

THE COURT: All right. You may be seated.

Now, I want you to understand that if I accept a no contest plea, as I told you before, it would allow the Court to treat you as if you had pled guilty.

A no contest plea means that you do not contest the charges, but it means that in this case the Court would be able to enter a conviction. The trade off here for you is obviously the dismissal of Counts I through IV and the amendment to Count V.

You understand that this is the trade off?

THE DEFENDANT: Sure.

THE COURT: And is this the reason that you're entering or wanting to enter the no contest plea?

THE DEFENDANT: What?

THE COURT: Is it the dismissal of the other charges and the amendment to the charge part of the reason that you're entering a no contest plea?

THE DEFENDANT: No. I'm screwed anyway so it don't really matter. That's fine. I entered my plea. Give me my sentence. Let me get on my way already.

THE COURT: Well, I would be doing a sentence at a later time so I could have an opportunity to look at your background. Because, as I said, the maximum is 30[sic] years. I'm not necessarily going to give you 30[sic] years unless it were absolutely appropriate.

Chances are—

THE DEFENDANT: How am I going to help myself? Twenty years in jail is life. Get it through your head, man.

THE COURT: Well, Mr. Major, I want to make sure that you understand what would happen if the Court accepts this no contest plea. And I want to make sure that it's a decision that you want to follow because we're set ready to go to trial on Monday. And you can have a trial on all these charges.

If you feel that you have a better chance at being found not guilty, then you can go to trial. If you feel that it would be better for you because of dismissal of four counts and an amendment of Count V to have the Court accept the no contest plea, then we'll go that direction.

In other words, the decision has to be yours. I know you are unhappy at this point because of the charges, and because of maybe the way your confinement has gone but you still need to make an intelligent—or try to make an intelligent decision on what you want to do.

So if I accept the no contest plea, I would enter the conviction of guilty. We would have a sentencing date, and I would dismiss Counts I through IV. And, of course, you're pleading to an amended charge so that would automatically be considered amended. So it does reduce the maximum possible penalties that I could enter.

And I'm promising you I would give a very careful look at your record and pay attention to your background and decide

based upon that what the sentence should be. I'm telling you the maximum is 30[sic] years. I'm not telling you I'm going to give you 30[sic] years.

You said 20, that's a lifetime. You're probably right. That is a lifetime. That's a long period of time. So I'm not necessarily going to give you 20 years either. I don't know what I'll give you because I don't know enough about you.

But it is difficult when, you know, you're acting just mad at me and at your attorney that I can know what your background is. But I want you to understand that I have to tell you what the maximum is, and I have to tell you that if I accept it, then the trial would be cancelled and we would just go forward with the sentencing where I would hear about your background. I wouldn't hear anymore really about the alleged crime.

So do you want me to accept the no contest plea or do you want to have this matter go to trial?

THE DEFENDANT: No. It's the same outcome. Can we just get it over now?

THE COURT: Well, I don't know whether it would be the same outcome. But if you feel it would be, then you're probably best to have the Court accept this no contest plea.

Is that what you would rather me do?

THE DEFENDANT: Yeah.

The State proceeded to give a factual basis for the plea. The following colloquy between the court and Appellant occurred before the acceptance of the plea:

THE COURT: All right. Mr. Major, is there any reason the Court should not accept the no contest plea?

THE DEFENDANT: I have no idea.

THE COURT: Well, do you want me to accept it?

THE DEFENDANT: Sure. If you want, go ahead.

THE COURT: Well, it's up to you; not up to me. If you say yes, you want me to accept it, we won't have a trial. If you say no, we'll have a trial.

THE DEFENDANT: Sure.

THE COURT: Yes, accept it?

THE DEFENDANT: Sure. Yeah. It doesn't matter.

THE COURT: It does matter.

All right. I'm going to find that the no contest plea is made freely and voluntarily of the defendant's own free will and accord and without any coercion of any kind and without any improper inducement.

The plea is made with a complete understanding of the charges pending, of the penalties, of his plea options, and of the rights waived by the plea of guilty plea [sic].

The plea is made after consultation with competent counsel. And I know he's said on the record his points where he's not satisfied with his counsel, but the Court finds that he's been provided with competent counsel.

The defendant is competent to enter the plea, and there's a factual basis upon which the plea rests.

I'm going to accept the plea agreement.

 [¶ 19] To the extent that Appellant is challenging his competence to plead, the record does not support his claim. Contrary to Appellant's characterization, the majority rule is that the standard for determining competence to stand trial is the same as the standard for determining competence to plead. *See Godinez v. Moran*, 509 U.S. 389, 395 n. 5, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (Stating that all circuits that had considered the issue except the D.C. and Ninth have "determined that the competency standard for pleading guilty is identical to the competency standard for standing trial" and collecting cases); *see also State v. Quarrels*, 211 Neb. 204, 318 N.W.2d 76 (Neb.1982); *State v. Heral*, 25 Ill.App.3d 806, 323 N.E.2d 138 (1975); and *State v. Byrd*, 22 Ariz.App. 375, 527 P.2d 777 (1974). The psychological evaluations of Appellant concluded that he was competent to stand trial, and Appellant does not challenge that determination. Further, Appellant admits that he was competent to plead guilty to the escape charge, which was given at the commencement of the very same hearing where the plea on the kidnapping charge was given.

[¶ 20] This is not to confuse the question of competence with the separate question of whether a plea is knowing and voluntary. A failure to follow the precepts of Rule 11, for example, could render the subsequent plea unknowing and involuntary but that is not related to whether Appellant was competent to plead. The evidence in the record shows conclusively that Appellant was competent to plead on the kidnapping charge. Appellant appears to be arguing that his alleged mental impairments affected his competence to a degree that the district court was required to take extraordinary measures to ensure that his plea was knowing and voluntary. Appellant cites no legal authority for that proposition. In any event, the record does not support his claim of a mental impairment. The psychological evaluations stated that "[t]here is also clear evidence in the testing data to support the conclusion that [Appellant's] memory for verbal material is more intact than he would like others to believe" and that there were "some indications of malingering in regard to [Appellant's] memory functioning." In short, the evidence clearly demonstrates that Appellant was competent to plead, and his claims of a mental impairment affecting his memory were not credible.

[¶ 21] Appellant contends that his plea was coerced because of the adversarial nature of the relationship that had developed between him and his counsel. The record does not support Appellant's contentions. The main crux of the dispute between Appellant and his counsel concerned Appellant's insistence on a defense based upon the theory that the victim had voluntarily accompanied him. Defense counsel acceded to Appellant's request and investigated the plausibility of the theory by contacting or attempting to contact the various witnesses identified by Appellant. The witnesses that defense counsel was able to locate failed to support Appellant's story. This was a question of trial strategy and it was incumbent upon defense counsel to offer his opinion to Appellant on the efficacy of any defense. In fact, defense counsel would have been remiss in his duty to represent Appellant if he had failed to do so. Here, defense counsel advised Appellant that he did not believe the proposed defense was viable in light of the facts. Simply because Appellant may have disagreed with that advice does not mean his plea was coerced.

[¶ 22] The record does not support the other allegations raised by Appellant in regard to his counsel's performance either. Appellant's allegation that defense counsel was more interested in protecting his own professional interests than ensuring Appellant a fair trial is completely unsupported by any citation to the record. Similarly, Appellant's claim that counsel was not prepared for trial is not substantiated. Our review of the record shows that defense counsel provided Appellant with effective representation. Initially, counsel pursued a defense centered on a contention that Appellant was not guilty by reason of a mental impairment. Counsel obtained evaluations of Appellant from the state hospital and from a forensic psychiatrist designated by the defense. When communications between defense counsel and Appellant were being hindered by security protocols at the penitentiary, counsel brought this to the attention of the district court, which took action to rectify the situation. Despite his misgivings about Appellant's proposed defense, counsel undertook an investigation. Ultimately, Appellant pleaded guilty to a single count of kidnapping pursuant to a plea agreement worked out with the State by defense counsel. In exchange for Appellant's plea, the State dropped four felony counts and the count pleaded to was amended to reduce the potential penalty that Appellant was facing from life to twenty years. The plea agreement appears to be reasonable in light of the State's very strong case against Appellant. Appellant even acknowledged that he wanted counsel to represent him and believed that he was "a very good attorney." In sum, the record contradicts Appellant's claims that his counsel's representation effectively coerced him into pleading.

[¶ 23] Keeping the above considerations in mind, the question remains whether the plea was knowing and voluntary. We conclude that it was. While Appellant's attitude, as reflected in his responses to the court, could best be described as hostile at times and abrupt, it is clear that Appellant under-

stood the consequences of making the plea and did so on his own initiative. Before accepting the plea, the district court complied with the requirements of Rule 11. Appellant was advised of the nature of the plea, the penalties, including the potential maximum sentence, associated with the charge he would be pleading to, the rights he would be relinquishing, and the consequences if the court accepted the plea. Appellant repeatedly affirmed that it was his intent to enter the plea and that he understood the proceedings. The record is clear that Appellant entered into the plea agreement on his own volition with full awareness of the consequences. Accordingly, we conclude that the plea was knowing and voluntary.

[¶ 24] In his other issue, Appellant claims that the district court abused its discretion by denying his motion to withdraw the no contest plea. Appellant's motion was based upon the complaints about his counsel that we have already noted. The motion was presented to the court at the outset of the sentencing hearing. Pursuant to W.R.Cr.P. 32(d), a court may allow a plea withdrawal prior to sentencing upon a showing of a just and fair reason. We review the court's decision on the motion for an abuse of discretion. Even if a "plausible" or a "just and fair" reason for withdrawal is presented, an abuse of discretion is not demonstrated if the requirements of Rule 11 have been met and the record clearly shows that the defendant intelligently, knowingly, and voluntarily entered the plea. *Triplett v. State*, 802 P.2d 162, 165 (Wyo.1990).

[¶ 25] In this case, we do not need to do an in-depth review using the factors set out in *Frame* noted above. Appellant's motion was based upon his complaints regarding his counsel, and we have already set out why those complaints did not render the plea unknowing or involuntary. To the contrary, we noted that Appellant entered into the plea intelligently, knowingly, and voluntarily. It is evident from the record that Appellant failed to supply the district court with any fair and just reason for withdrawing the plea. Also, the record manifestly demonstrates the district court's compliance with Rule 11 in accepting the plea. Accordingly, denying the motion was a sound exercise of the trial court's discretion, and we will not disturb its ruling on appeal.

**CONCLUSION**

[¶ 26] Appellant's nolo contendere plea was knowing and voluntary, and the district court did not abuse its discretion in denying his motion to withdraw the plea. Affirmed.