# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 7

OCTOBER TERM, A.D. 2024

January 14, 2025

DANNY JOSEPH JARVIS,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-24-0067

*Appeal from the District Court of Weston County*
*The Honorable James Michael Causey, Judge*

*Representing Appellant:*
Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender;* Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

* An order substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Danny Jarvis pled guilty to burglary in violation of Wyo. Stat. Ann. § 6-3-301(a) & (b).  Prior to sentencing, he filed a motion to withdraw his guilty plea.  The district court denied the motion and sentenced him to seven to ten years in prison.  Mr. Jarvis claims the district court abused its discretion by denying his motion to withdraw his guilty plea.  We affirm.

## ISSUE

[¶2]   Mr. Jarvis raises a single issue on appeal: Whether the district court abused its discretion when it denied his motion to withdraw his guilty plea.

## FACTS

[¶3]   In the early morning hours of May 20, 2023, Mr. Jarvis and his significant other, Justine Dallenbach, broke into the Fountain Inn in Weston County, Wyoming.  They stole a safe containing $10,000 to $20,000 and a cash box containing $547.  To avoid detection, they stole or cut the wires to security cameras and various computer equipment.  Mr. Jarvis was arrested and charged with burglary and felony property destruction in violation of Wyo. Stat. Ann. §§ 6-3-301(a) & (b) and 6-3-201(a) & (b)(iii), respectively.  Mr. Jarvis was appointed an attorney and bond was set at $10,000 cash.  On July 24, 2023, the court granted Mr. Jarvis' unopposed motion to reduce his bond to a $10,000 personal surety bond to allow him to obtain employment and to attend drug treatment.  Shortly thereafter, Mr. Jarvis entered residential drug treatment.  In an unrelated circuit court case, Mr. Jarvis was charged with driving while under the influence of alcohol or controlled substances (DUI charge).

### A.   Change of Plea Hearing

[¶4]   On August 31, 2023, the parties appeared for the pretrial conference.  At the onset of the hearing, defense counsel informed the court Mr. Jarvis wanted to plead guilty.  When asked if there was a plea agreement, defense counsel stated there was no plea agreement, but Mr. Jarvis intended to plead guilty to burglary and, in exchange for his plea, the State would dismiss the felony property destruction charge.  He also stated there was no agreement between the parties with respect to Mr. Jarvis' sentence but acknowledged Mr. Jarvis would owe restitution with respect to both the burglary and felony property destruction charges.  The prosecutor confirmed defense counsel's statements, stating Mr. Jarvis would enter "a cold plea" to burglary and there was no agreement with respect to his sentence other than he would owe restitution.  Mr. Jarvis agreed with the remarks of defense counsel and the prosecutor.

1

[¶5]     Before accepting the plea, the district court asked Mr. Jarvis whether he had the opportunity to meet with defense counsel, discuss the facts and law with him, and ask any questions.  Mr. Jarvis answered in the affirmative.  He also informed the court he was satisfied with defense counsel's representation.  The court advised him of the burglary charge, the statutory maximum sentence (ten years in prison), the rights he would have if he did not plead guilty, the rights he would be waiving by pleading guilty, and the consequences of having a felony conviction.  Mr. Jarvis indicated he understood these advisements.  The court informed him there was "no plea agreement per se" and it was "simply going to be a cold plea."  It stated it could impose a sentence up to the statutory maximum sentence, and imposition of the maximum sentence would not be grounds for him to withdraw his plea.  Mr. Jarvis stated he understood.  He also informed the court that no one had forced or threatened him to plead guilty or promised him anything to plead guilty.  Thereafter, Mr. Jarvis provided a factual basis for his plea.  He admitted that on or about May 20, 2023, he entered the Fountain Inn in Weston County, Wyoming, without permission with the intent to steal and did steal a safe containing between $10,000 and $20,000 and a cash box containing $547.  The court accepted the guilty plea.  It found a sufficient factual basis for the plea, that Mr. Jarvis understood the charge and the consequences of pleading guilty, and his guilty plea was "knowingly and voluntarily made after consultation with competent legal counsel" and "not the result of any improper threats or inducements."  It granted the State's motion to dismiss the felony property destruction charge without prejudice.

[¶6]     At the conclusion of the change of plea hearing, defense counsel requested Mr. Jarvis be allowed to be released on bond pending sentencing.  The State opposed the request, arguing, among other things, that the reasons for allowing him to be released on a personal surety bond were no longer relevant because Mr. Jarvis recently left drug treatment and never obtained employment.  Defense counsel responded that Mr. Jarvis was not employed because he was in residential drug treatment.  He also explained Mr. Jarvis left treatment to obtain needed medical care, but Mr. Jarvis planned to return to treatment if he was released pending sentencing.  He further highlighted Mr. Jarvis had cooperated with the State by "point[ing] them in the direction of some of the stolen . . . property."  The district court denied Mr. Jarvis' request to be released pending sentencing and revoked his bond.  Defense counsel then asked the court if it would entertain a motion for bond if Mr. Jarvis returned to treatment.  After the court said it may, defense counsel stated Mr. Jarvis "would like to make just a brief statement[.]"  The court denied the request.  Mr. Jarvis then said, "Your Honor, can I provide you a little bit of information that I think - -."  The court replied, "That is a no, Mr. Jarvis.  You've had the opportunity to address me.  If [defense counsel] wishes to present a motion, I will entertain it[.]"

## B.     Mr. Jarvis' Motion to Withdraw His Guilty Plea

[¶7]     On September 25, 2023, Mr. Jarvis filed a pro se motion to dismiss defense counsel and to proceed pro se due to counsel's ineffectiveness.  Three days later, he filed a pro se

2

motion to disqualify the prosecutor and a pro se motion to withdraw his guilty plea. Relevant here, all three motions were based on the claim that he was promised a "global deal" in exchange for his cooperation with law enforcement and the "global deal" never occurred. As Mr. Jarvis explained in affidavits attached to these motions, defense counsel was appointed to represent him in both the current case and in the circuit court DUI case. He claimed that in May 2023, while being detained in the county jail after being arrested for burglarizing the Fountain Inn, he spoke with defense counsel and the prosecutor about a possible deal. He stated the prosecutor agreed that if he took law enforcement to the safe and camera evidence, (1) "Justine Dallenbach [would] be released from custody, and worst case scenario be allowed to plead to a misd[emeanor]," and (2) he "would plead [guilty] to a felony only with probation. A global deal." According to Mr. Jarvis, the global deal included the dismissal of the DUI charge in circuit court. That same day, he and law enforcement went to Spearfish, South Dakota, and located the safe and four camera drives. Mr. Jarvis claimed that while Ms. Dallenbach was allowed to plead no contest to a misdemeanor, his DUI charge was not dismissed. Mr. Jarvis said he tried to inform the court at the end of the change of plea hearing that no one had mentioned his DUI charge being dismissed but the court refused to let him speak. He argued the breach of the "global deal" rendered his guilty plea involuntary and was grounds for dismissal of defense counsel and the prosecutor.

[¶8]  On October 26, 2023, the district court held a hearing on Mr. Jarvis' motions (hereinafter "motions hearing"). After advising Mr. Jarvis of the ramifications of representing himself and ensuring he understood them, the court allowed defense counsel to withdraw and Mr. Jarvis to proceed pro se. Mr. Jarvis withdrew his motion to disqualify the prosecutor. He admitted the prosecutor never spoke to him about his circuit court DUI case or promised him anything. The court took the motion to withdraw his guilty plea under advisement.

[¶9]  Thereafter, Mr. Jarvis provided the district court a letter he wrote to an individual who we presume was associated with defense counsel. In the letter, dated June 1, 2023, he asked whether defense counsel could get the "$10,000 cash bond with 2 felony charges dismissed, so [he could] plead guilty to the 1 felony, suspended, with the DUI ran concurrent so [he] can . . . take care of [his] mom under very strict conditions of probation[.]" He claimed this letter proved he "wasn't making 'the global deal' up." He also provided the court a motion filed by defense counsel in the circuit court DUI case on June 6, 2023. The unopposed motion requested the court vacate a June 8, 2023 scheduling conference because "[t]he Defendant and State are working on a global plea agreement that would resolve both the Defendant's Circuit Court case[] and his District Court case."

[¶10]  The district court issued a written order denying Mr. Jarvis' motion to withdraw his guilty plea. It determined Mr. Jarvis had failed to show a fair and just reason to withdraw his plea under W.R.Cr.P. 32(d). The district court sentenced Mr. Jarvis to seven to ten

years imprisonment and ordered him to pay $20,000 in restitution. Mr. Jarvis timely appealed.

## STANDARD OF REVIEW

[¶11]     We review the denial of a motion to withdraw a plea for an abuse of discretion. *See Steffey v. State*, 2019 WY 101, ¶ 17, 449 P.3d 1100, 1105 (Wyo. 2019); *Berger v. State*, 2017 WY 90, ¶ 7, 399 P.3d 621, 623 (Wyo. 2017). "A court abuses its discretion only when it could not reasonably decide as it did." *Steffey*, ¶ 18, 449 P.3d at 1105, (citing *Berger*, ¶ 7, 399 P.3d at 623 and *Venard v. Jackson Hole Paragliding, LLC*, 2013 WY 8, ¶ 6, 292 P.3d 165, 168 (Wyo. 2013)); *see also*, *Chapman v. State*, 2013 WY 57, ¶ 52, 300 P.3d 864, 874 (Wyo. 2013) (under the abuse of discretion standard, we decide "whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious" (quotations omitted)). "An abuse of discretion can [also] exist if the wrong law has been applied, the correct law has been applied but incorrectly interpreted, or if the correct law has been improperly applied." *Grove v. Pfister*, 2005 WY 51, ¶ 6, 110 P.3d 275, 278 (Wyo. 2005); *see also*, *Finley Res., Inc. v. EP Energy E&P Co., L.P.*, 2019 WY 65, ¶ 7, 443 P.3d 838, 842 (Wyo. 2019).

*Wanberg v. State*, 2020 WY 75, ¶ 14, 466 P.3d 269, 273 (Wyo. 2020).

## DISCUSSION

[¶12]     Withdrawal of a plea before sentencing is governed by W.R.Cr.P. 32(d) which states: "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."

*Wanberg*, ¶ 15, 466 P.3d at 273. "A fair and just reason includes inadequate plea colloquies, newly discovered evidence, intervening circumstances, or other reasons that did not exist when the defendant entered the plea. The reason must be something more than the wish to have a trial, or belated misgivings about the plea." *Winsted v. State*, 2010 WY 139, ¶ 16, 241 P.3d 497, 501–02 (Wyo. 2010) (citations omitted). "'The defendant has the burden of establishing a fair and just reason' to withdraw a plea under W.R.Cr.P. 32(d)." *Delgado v. State*, 2022 WY 61, ¶ 25, 509 P.3d 913, 922 (Wyo. 2022) (quoting *Wanberg*, ¶ 15, 466 P.3d at 273).

[¶13] "We have identified a nonexclusive list of seven factors, often referred to as the *Frame* factors, to assist courts in determining whether a defendant has established a fair and just reason to withdraw his plea." *Pettus v. State*, 2022 WY 126, ¶ 21, 518 P.3d 267, 274 (Wyo. 2022) (quoting *Delgado*, ¶ 27, 509 P.3d at 923). *See also Frame v. State*, 2001 WY 72, ¶ 7, 29 P.3d 86, 89 (Wyo. 2001). The *Frame* factors are:

> (1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Frame*, ¶ 7, 29 P.3d at 89 (citing 3 Charles A. Wright et al., *Federal Practice and Procedure* § 538 (Supp. 2001), and *United States v. Black*, 201 F.3d 1296, 1299–300 (10th Cir. 2000)).

[¶14] We have been clear that

> [t]he *Frame* factors are not exclusive or exhaustive, and do not provide a numerical calculation indicating when a "fair and just reason" exists for withdrawal of a plea. "Our intention in setting out the list of factors in *Frame* was to provide guidance to the trial courts in making the determination of whether a defendant has presented a fair and just reason in support of the motion to withdraw his guilty plea. . . . No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal."

*Wanberg*, ¶ 16, 466 P.3d at 273 (quoting *Major v. State*, 2004 WY 4, ¶ 14, 83 P.3d 468, 473 (Wyo. 2004)).

[¶15] The district court addressed each *Frame* factor but did not identify whether any given factor weighed in favor of or against Mr. Jarvis' motion to withdraw or whether it was neutral. It ultimately concluded: "After considering the seven factors outlined in . . . *Frame*, the court determines that Mr. Jarvis has failed to present a fair and just reason to permit him to withdraw his plea." Mr. Jarvis challenges the court's analysis on each factor and its conclusion that he failed to show a fair and just reason to withdraw his plea. We address Mr. Jarvis' arguments on each factor and then consider the *Frame* factors as a whole to determine whether the district court abused its discretion by finding Mr. Jarvis had failed to show a fair and just reason for withdrawal of his plea.

## A.      Factor 1—Assertion of Innocence

[¶16]  The district court said: "[I]t does not appear Mr. Jarvis is asserting his innocence; rather, he is claiming he waived his rights only after, and perhaps as a result of, various failures by defense counsel, the prosecutor, and to a degree this court." Mr. Jarvis concedes he did not assert he was innocent in his motion to withdraw or during his arguments at the motions hearing but argues the court's analysis of this factor was "overly simplistic." He cites to *Delgado* to support his assertion that the fact he did not contest his guilt at the change of plea hearing does not control the question of whether he asserted his innocence.[1]

[¶17]  In *Delgado*, Mr. Delgado filed a motion to withdraw his no-contest plea based in part on his claim that he was not guilty because of his mental illness under Wyo. Stat. Ann. § 7-11-304(a). *Delgado*, ¶¶ 10, 29, 509 P.3d at 918–19, 923. The district court denied the motion. *Id.* ¶ 10, 509 P.3d at 919. With respect to the first *Frame* factor, the district court found Mr. Delgado had not asserted his innocence "because he agreed, at his change of plea hearing, that the allegations in the affidavit supporting the criminal information established a factual basis for his no contest plea." *Id.* ¶ 29, 509 P.3d at 923. We determined Mr. Delgado's admission to the underlying allegations did not control the question of whether he asserted his innocence and concluded a defendant may satisfy the first *Frame* factor by asserting his legal innocence. *Id.* ¶¶ 29–30, 509 P.3d at 923–24. *See also McHenry v. State*, 2023 WY 68, ¶ 23, 532 P.3d 217, 225 (Wyo. 2023) ("We recognized in *Delgado* . . . that a defendant may satisfy the first *Frame* factor by asserting his legal innocence."). We went on to hold the first *Frame* factor did not weigh in favor of allowing withdrawal because Mr. Delgado had failed to present nonspeculative and reliable evidence that he was not guilty because of his mental illness. *Delgado*, ¶¶ 32, 36, 509 P.3d at 924–25. *See also McHenry*, ¶ 26, 532 P.3d at 226 ("When considering a motion to withdraw a plea, the mere assertion of a legal defense is insufficient to satisfy the first *Frame* factor.

---

[1] Mr. Jarvis also argues the United States Supreme Court has historically suggested that a defendant's guilt or innocence of the underlying charge is not a controlling factor when determining whether a fair and just reason to withdraw the plea has been shown. He relies on *Kercheval v. United States*, where the Supreme Court stated that a court may, on timely application by a defendant, vacate a guilty plea "shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence." *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). While we agree with Mr. Jarvis that an assertion of innocence is not necessarily determinative to whether a defendant has shown a fair and just reason to withdraw his plea, *Kercheval* is not on point. There, the question was whether a withdrawn guilty plea may be admitted as evidence in a subsequent trial for the same offense. *Id.* at 223, 47 S.Ct. at 583. The Court answered no. *Id.* In doing so, it noted that a defendant may seek to withdraw his plea whether he is guilty or innocent, and the court will allow withdrawal if "fair and just." *Id.* at 223–24, 47 S.Ct. at 583. As a result, a withdrawn guilty plea is not relevant to guilt or innocence at the later trial. The Court did not address the weight an assertion of innocence should be given in determining whether there is a "fair and just" reason to allow a defendant to withdraw his plea.

6

[T]he defendant must present a credible claim of legal innocence." (citations and internal quotation marks omitted)).

[¶18]  As in *Delgado*, Mr. Jarvis' admission of guilt at the change of plea hearing is not controlling.  Unlike Mr. Delgado, Mr. Jarvis did not assert a legal defense to the charges.  Mr. Jarvis sought to withdraw his plea because he claimed it was not voluntary—he did not receive a dismissal of the DUI charge which he believed was part of the exchange for his guilty plea.  His argument, if successful, would not have resulted in dismissal of the charges against him in this case and does not qualify as a claim of legal innocence.  *Cf. McHenry*, ¶ 24, 532 P.3d at 225 ("When a defendant's speedy trial right has been violated, the charges against him must be dismissed.  Thus, proof of a violation of speedy trial could establish the defendant's legal innocence." (citations omitted)).  The district court reasonably concluded Mr. Jarvis had not asserted his innocence.  This factor weighs against allowing Mr. Jarvis to withdraw his plea.

**B.  Factor 2—Prejudice to State**

[¶19]  The district court determined the State would suffer prejudice if Mr. Jarvis was allowed to withdraw his plea because the State dismissed the felony property destruction charge, and it would be "forced to reinitiate prosecution of [that charge]."  Mr. Jarvis argues the State would not be prejudiced by withdrawal of his plea.  He maintains that while it may be inconvenient for the State to have to recharge the felony property destruction charge and prepare for trial, the State could still prosecute the charge because its dismissal was without prejudice.  He points out the State did not assert it had lost witnesses or evidence necessary to convict him.

[¶20]  In *Winsted*, the State dismissed charges in exchange for Mr. Winsted's plea.  *Winsted*, ¶ 5, 241 P.3d at 499.  Before sentencing, Mr. Winsted moved to withdraw his plea, and the motion was denied.  *Id.*  Addressing the second *Frame* factor, we explained the State would have to initiate new criminal proceedings to pursue the dismissed charges and "[t]rial on all charges would be delayed."  *Id.* ¶ 16, 241 P.3d at 502.  We noted "[w]itness' loss of memory during this time period, or their unavailability, could unfairly prejudice the State" and noted that "it [was] *undisputed* that the State would suffer some degree of prejudice."  *Id.* (emphasis added).

[¶21]  In other cases, we have found prejudice to the State where significant time has passed between the motion to withdraw and the crime.  *See, e.g.*, *Demeulenaere v. State*, 2008 WY 147, ¶ 17, 197 P.3d 1238, 1242 (Wyo. 2008) (agreeing with the State that it would suffer prejudice because the crime occurred over four years ago); *Van Haele v. State*, 2004 WY 59, ¶ 33, 90 P.3d 708, 717 (Wyo. 2004) ("the government would likely suffer prejudice from a plea withdrawal because the crime involved occurred almost a year and a half earlier"); *Doles v. State*, 2002 WY 146, ¶ 12, 55 P.3d 29, 33 (Wyo. 2002) ("the

7

government would likely suffer prejudice from a plea of withdrawal because the crime involved an informant and occurred three years earlier").

[¶22]  Here, the felony property destruction charge was dismissed without prejudice in exchange for Mr. Jarvis' guilty plea.  Mr. Jarvis moved to withdraw his guilty plea less than one month after entering it and approximately four months after the crime was committed.  If Mr. Jarvis is allowed to withdraw his plea, the State would have to recharge him on the felony property destruction charge, and a trial would need to be held on both the burglary and the felony property destruction charges.  While this would be inconvenient to the State, the question under the second *Frame* factor is whether permitting withdrawal would "prejudice" the State.  "Prejudice" means "[d]amage or detriment to one's legal rights or claims."  *Prejudice*, Black's Law Dictionary (11th ed. 2019).  The State argued below that "months have passed *giving the State concern* as to the memory and location of certain witnesses by the time this matter would go to trial."[2]  (Emphasis added.)  There is no other indication in the record that the State would be prejudiced in proceeding to trial against Mr. Jarvis if his guilty plea were withdrawn.  Because only four months passed between the crime and Mr. Jarvis' motion to withdraw, it seems unlikely the State's witnesses would be unavailable or their memories would have faded.  We agree with Mr. Jarvis that the State would not be prejudiced if he was allowed to withdraw his plea.  This factor weighs in favor of allowing him to withdraw his plea.

## C.  Factor 3—Delay in Filing Motion to Withdraw

[¶23]  The court found Mr. Jarvis delayed in filing his motion to withdraw because it was filed nearly a month after pleading guilty.  During that month, Mr. Jarvis wrote three letters to the court, none of which addressed his concerns with the "global deal."  The district court then found that the delay was not substantial.  Mr. Jarvis argues a less than one-month delay is not significant, especially considering that whether to withdraw one's guilty plea is an important decision with permanent legal consequences which should not be made hastily.  He also points out that in the time between his plea and his motion to withdraw, he was trying to secure private counsel after seeking to dismiss defense counsel for negligently failing to, *inter alia*, secure the "global deal."  He asserts a motion to withdraw a guilty plea requires sufficient detail and justification for withdrawal which takes time to draft, especially for incarcerated individuals like him.  Finally, Mr. Jarvis claims it was only in the interval between his guilty plea and his motion to withdraw that he learned his circuit court DUI case had not been dismissed, there was no global deal, and defense counsel had been ineffective.

---

[2] The State suggested at the motions hearing that it would be prejudiced by allowing Mr. Jarvis to withdraw his plea because it provided Ms. Dallenbach leniency by allowing her to plead to a misdemeanor.  However, as it acknowledged at the hearing, the State provided Ms. Dallenbach leniency in exchange for Mr. Jarvis' cooperation in bringing law enforcement to the safe and camera evidence, not in exchange for his guilty plea.

[¶24] While a less than one-month delay may not seem significant, our case law demonstrates that the third *Frame* factor contemplates more than a mathematical computation of the number of days between a change of plea and a motion to withdraw that plea. We also consider whether the delay was reasonable in light of the circumstances.

[¶25] For example, in *Wanberg*, Mr. Wanberg pled no contest to aggravated burglary on July 5, 2018. *Wanberg*, ¶ 5, 466 P.3d at 272. Almost ten months later, on April 29, 2019, he filed a motion to withdraw his plea based on an affidavit from the victim dated December 5, 2018, in which she recanted. *Id.* ¶ 8, 466 P.3d at 272. The district court denied the motion to withdraw. *Id.* ¶ 12, 466 P.3d at 272. With respect to the third *Frame* factor, the district court found Mr. Wanberg delayed in filing his motion to withdraw. *Id.* ¶ 18, 466 P.3d at 273–74. We agreed:

> The record shows Mr. Wanberg's counsel knew of the alleged recantation nearly five months before he filed his motion [to withdraw]. His delay indicates the alleged recantation may not have been Mr. Wanberg's true motivation for wanting to withdraw his plea, but instead he became concerned about the consequences he faced as the sentencing date approached.

*Id.* ¶ 18, 466 P.3d at 274.

[¶26] In *Delgado*, a little over three months after pleading no contest to a felony, Mr. Delagado moved to withdraw his plea asserting a felony conviction would prevent him from continuing his current employment, and he was not criminally responsible for his conduct because of his bipolar condition. *Delgado*, ¶¶ 7, 10, 37, 509 P.3d at 918–19, 925. The district court denied the motion. *Id.* ¶ 10, 509 P.3d at 919. It ruled the third *Frame* factor weighed "slightly against" permitting Mr. Delgado to withdraw his plea because he delayed in filing his motion to withdraw. *Id.* ¶ 37, 509 P.3d at 925. We agreed with the district court that Mr. Delgado unduly delayed in filing his motion to withdraw to the extent it was based upon the employment consequences of his plea because he became aware of these consequences two days after entering his plea but did not file his motion until over three months later. *Id.* ¶¶ 37–38, 509 P.3d at 925. However, we disagreed with the district court that he delayed in filing his motion to withdraw based on his bipolar condition. *Id.* ¶ 39, 509 P.3d at 925. Mr. Delagado was diagnosed on April 29, 2020, and was released from treatment on May 27, 2020. *Id.* Defense counsel obtained the bipolar diagnosis at the end of May 2020 or the beginning of June 2020, and Mr. Delgado's motion to withdraw was filed a few days later. *Id.* *See also McHenry*, ¶¶ 11, 15, 29, 31, 532 P.3d at 222–24, 226–27 (motion to withdraw pleas based on defense counsel's performance and speedy trial issue filed six months after entering pleas weighed against withdrawal where defendant was aware of these matters at the time he entered his pleas).

[¶27] Mr. Jarvis sought to withdraw his guilty plea arguing it was not voluntary because he did not receive the "global deal" which included dismissal of the DUI charge. In the district court, Mr. Jarvis stated he attempted to raise the failure to address the dismissal of the DUI charge at the time of the change of plea hearing but was denied the opportunity to speak. This shows he was aware of the problem at the time he entered his plea. Mr. Jarvis, then, sent several letters to the court. None of these asked for a withdrawal of his plea or mentioned the "global deal." These letters also belie his claim that it was difficult for him, as an incarcerated individual, to file a motion to withdraw his plea.

[¶28] Mr. Jarvis did not present any "newly discovered evidence, intervening circumstances, or other reasons that did not exist when [he] entered his plea" to justify his almost one-month delay in filing the motion to withdraw his guilty plea. *McHenry*, ¶ 31, 532 P.3d at 227 (quoting *Pettus*, ¶ 19, 518 P.3d at 274). The district court reasonably found he delayed in filing his motion to withdraw, but the delay was not substantial. This factor is neutral.

## D.      Factor 4—Substantial Inconvenience to the Court

[¶29] The district court concluded that a withdrawal of Mr. Jarvis' guilty plea would inconvenience the court but not substantially. Mr. Jarvis claims the court's conclusion on this factor cannot be sustained because it provided no explanation of any inconvenience such as an exceptionally busy docket. He asserts that for any inconvenience to the court's schedule to weigh against withdrawal, it must be interrelated to some discreditable reason on the part of the defendant for withdrawing his plea, such as a motive to intentionally inconvenience the court or to delay the proceedings. Mr. Jarvis asserts the district court's schedule had nothing to do with his reason for seeking to withdraw his plea.

[¶30] The district court found that allowing Mr. Jarvis to withdraw his plea would inconvenience the court but then stated, "while this court cannot definitely conclude that permitting Mr. Jarvis to withdraw his plea at this time would substantially inconvenience the court itself, [this] factor[] must be considered as part of the court's analysis." The fourth *Frame* factor requires the court to consider whether allowing the defendant to withdraw his plea would "*substantially* inconvenience the court." *Frame*, ¶ 7, 29 P.3d at 89 (emphasis added). The court specifically stated it would not be substantially inconvenienced. This factor weighs in favor of permitting withdrawal.

## E.      Factor 5—Close Assistance of Counsel

[¶31] The district court determined the record did not support a finding that Mr. Jarvis did not receive the close assistance of counsel. It rejected his claim that defense counsel was ineffective because he failed to present to the court the "global deal" reached by the parties. It found the terms of the guilty plea were outlined by the parties at the change of plea hearing and, although Mr. Jarvis was given the opportunity to notify the court of any

disagreement, he did not. It also found defense counsel's efforts to have Mr. Jarvis released pending sentencing, which included detailing Mr. Jarvis' cooperation with the State and his efforts to obtain employment and treatment while on bond, showed defense counsel worked closely with Mr. Jarvis on the case. Mr. Jarvis maintains the district court erred by finding he received the close assistance of counsel.

[¶32] We have described the fifth *Frame* factor as follows:

> "[T]he close assistance of counsel factor under *Frame* requires counsel's assistance to be adequate and available." *Delgado*, ¶ 40, 509 P.3d at 926 (quoting *Steffey*, ¶ 35, 449 P.3d at 1109, and citing *Doles v. State*, 2002 WY 146, ¶ 22, 55 P.3d 29, 33 (Wyo. 2002)). The focus of the inquiry is whether counsel provided adequate assistance to ensure the defendant made an "informed decision when he entered his plea." *Steffey*, ¶ 37, 449 P.3d at 1109.

*McHenry*, ¶ 34, 532 P.3d at 227–28.

> Circumstances that may support a finding the defendant did not receive the close assistance of counsel in entering his plea include when defense counsel refuses to meet with the defendant, ignores his requests, is unavailable to assist him, fails to communicate with him, or has a contentious relationship with him.

*Keller v. State*, 2024 WY 71, ¶ 48, 551 P.3d 450, 463 (Wyo. 2024) (citing *Delgado*, ¶ 41, 509 P.3d at 926).

[¶33] Mr. Jarvis argues the record is clear that defense counsel did not provide him adequate assistance to ensure he made an informed decision when entering his guilty plea. He claims he agreed to plead guilty only because he believed, after conferencing with defense counsel, that the State had agreed to dismiss his DUI charge. Mr. Jarvis maintains defense counsel failed to inform him that a DUI charge under Wyo. Stat. Ann. § 31-5-233(b) and (e) cannot be dismissed in exchange for a guilty plea because Wyo. Stat. Ann. § 31-5-233(j) provides a DUI charge may only be dismissed if "the prosecuting attorney in open court moves or files a statement to reduce the charge or dismiss, with supporting facts, stating that there is insufficient evidence to sustain the charge." Mr. Jarvis contends defense counsel's failure to properly advise him on the law demonstrates he did not receive close assistance of counsel at the time he entered his guilty plea.

[¶34] Mr. Jarvis raised a slightly different argument to the district court. He argued defense counsel did not provide him close assistance of counsel because defense counsel

11

informed him the DUI charge would be dismissed if he pled guilty to burglary, and the DUI charge was never dismissed. In any event, both arguments hinge on his claim that he pled guilty because he believed the DUI charge would be dismissed. Mr. Jarvis' position is not supported by the record. At the change of plea hearing, after defense counsel and the prosecutor both stated the terms of Mr. Jarvis' plea—he would plead guilty to burglary and the State would dismiss the felony property destruction charge—Mr. Jarvis agreed with their recitation. He also stated he was not promised anything to plead guilty.

[¶35]  Mr. Jarvis submitted materials to the district court which he claimed supported his position that dismissal of the DUI charge was an integral part of his guilty plea—his affidavits attached to his pro se motions, his June 1, 2023 letter to an individual associated with defense counsel, and defense counsel's motion to vacate a scheduling conference in his circuit court DUI case. We address each item in turn.

[¶36]  In his affidavits, Mr. Jarvis attested that the global deal required (1) Ms. Dallenbach to be released from prison or allowed to plead to one misdemeanor, and (2) Mr. Jarvis to plead guilty to one felony and all other charges would be dismissed. He also declared that on June 20, 2023, two months prior to the change of plea hearing in this case, defense counsel advised him to waive his rights to a preliminary hearing and to a speedy trial in the circuit court DUI case because "he had a global deal, the DUI will get dismissed." At the change of plea hearing, however, defense counsel and the prosecutor stated the State would dismiss the felony property destruction charge in exchange for his guilty plea. The court asked Mr. Jarvis if this was his understanding of the parties' agreement, and he answered in the affirmative. He did not raise the DUI charge or tell the district court the DUI charge was to be dismissed in exchange for his guilty plea. Mr. Jarvis' affidavits are an after-the-fact attempt to overcome his statements to the district court at the change of plea hearing and, as such, are not persuasive.

[¶37]  The letter Mr. Jarvis submitted to the court after the motions hearing does not support his claim that he pled guilty to burglary because he believed the DUI charge would be dismissed. In the letter, Mr. Jarvis writes that he intended to plead guilty to one felony "with the DUI ran concurrent." A concurrent sentence does not implicate a dismissal.

[¶38]  Finally, the fact defense counsel filed an unopposed motion to vacate a scheduling conference in the circuit court DUI case because he was working with the State on a "global plea agreement that would resolve both the [circuit court case] and [the district court] case" does not establish that there was an agreement to dismiss the DUI charge in exchange for Mr. Jarvis' guilty plea to burglary. That motion was filed in the circuit court on June 6, 2023. The prosecutor explained at the motions hearing in this case that he and defense counsel had talked about resolving Mr. Jarvis' district court and circuit court cases together, but ultimately defense counsel said Mr. Jarvis would enter a cold plea to burglary, which he did. He also stated that although he "figured that some sort of resolution on the circuit court matter would happen if we had a guilty plea in district court, . . . we were still working

through those [the day of the change of plea hearing]." Evidence that the parties were working on a global resolution of the district court and circuit court cases in June 2023 does not show that Mr. Jarvis' guilty plea in August 2023 was contingent on a global resolution.

[¶39] Because Mr. Jarvis failed to show that he pled guilty because he believed the DUI charge would be dismissed, he failed to establish that his guilty plea was the product of defense counsel misinforming him of the law or otherwise providing him inadequate assistance. The district court reasonably found the record did not support Mr. Jarvis' claim that he did not receive the close assistance of counsel. This factor weighs against allowing Mr. Jarvis to withdraw his plea.

## F.    Factor 6—Whether the Plea Was Knowing and Voluntary

[¶40] The district court found Mr. Jarvis' plea was knowing and voluntary. It noted that at the change of plea hearing it advised Mr. Jarvis of the charges he faced, the rights and obligations he had, and the direct and indirect consequences of pleading guilty to or being found guilty of the charges, including the possible punishments. Mr. Jarvis stated he understood. It also noted that Mr. Jarvis agreed with defense counsel's and the prosecutor's recitation of the circumstances underlying Mr. Jarvis' plea, and Mr. Jarvis denied there were any promises, threats, or inducements surrounding his decision to plead guilty. The court rejected Mr. Jarvis' assertion that when he was denied the opportunity to speak at the end of the change of plea hearing, he was seeking to inform the court of certain details of the "global deal." The court found such claim did not

> make sense in light of his previous answers to the court's specific questions, the context of when Mr. Jarvis wished to make the statement [(after learning the court denied his request to be released pending sentencing)], and the letters and other materials that Mr. Jarvis submitted directly to the court during the four weeks after the change of plea proceeding [in which he sought to return to treatment and obtain medical care].

[¶41] Mr. Jarvis admits he received the Rule 11 advisements and that no one forced him to enter a guilty plea. Nevertheless, he claims his plea was not knowing or voluntary because (1) he was induced to enter the plea by his attorney's misrepresentation that his DUI case could be dismissed as part of a plea bargain, and (2) his plea was the product of an improper agreement between defense counsel and the State that his DUI charge could be dismissed as part of a plea bargain.

[¶42] A guilty plea "must be entered by a defendant knowingly and voluntarily." *Delgado*, ¶ 42, 509 P.3d at 926. "Whether or not a plea was knowing and voluntary is

13

determined by an analysis within the context of W.R.Cr.P. 11." *McHenry*, ¶ 38, 532 P.3d at 228 (quoting *Dobbins v. State*, 2012 WY 110, ¶ 62, 298 P.3d 807, 824 (Wyo. 2012)).

> For a plea to be knowing, the court must properly advise the defendant and ensure he understands the "nature of the plea, the penalties, including the potential maximum sentence[] associated with the charge he would be pleading to, the rights he would be relinquishing, and the consequences if the court accept[s] the plea."

*Delgado*, ¶ 42, 509 P.3d at 926 (quoting *Major*, ¶ 23, 83 P.3d at 479 (citing W.R.Cr.P. 11)).

> A plea is voluntary when it is
>
> > entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [and is not] induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*McHenry*, ¶ 38, 532 P.3d at 228–29 (quoting Dobbins, ¶ 62, 298 P.3d at 824). "We look to the totality of the circumstances to determine whether a plea was knowing and voluntary." *Pettus*, ¶ 30, 518 P.3d at 276 (quoting *Steffey*, ¶ 19, 449 P.3d at 1105).

[¶43]   As we explained above, Mr. Jarvis failed to show he pled guilty because he believed the DUI charge would be dismissed.  He agreed with the defense counsel's and the prosecutor's recitals of the terms of his guilty plea, which did not include dismissal of the DUI charge, and told the court no one had promised him anything to plead guilty.  The totality of the circumstances shows Mr. Jarvis entered his plea knowingly and voluntarily. This factor weighs against permitting Mr. Jarvis to withdraw his plea.

## G.    Factor 7—Waste of Judicial Resources

[¶44]   The district court found that permitting Mr. Jarvis to withdraw his plea would waste judicial resources as well as the time, effort, and resources of the parties, the victim, and the public.  Mr. Jarvis maintains the court's decision on this factor was an abuse of discretion because it failed to provide any explanation or analysis supporting it.  He also claims the court had no evidence upon which it could reasonably conclude a trial would be a waste of resources.  Mr. Jarvis argues "[i]t should never be claimed a waste of judicial

14

resources to provide citizens, especially criminal defendants, with access to their day in court."

[¶45] In *Wanberg*, Mr. Wanberg moved to withdraw his plea based on his victim recanting. *Wanberg*, ¶ 8, 466 P.3d at 272. In addressing the seventh *Frame* factor, the district court found "it would be a tremendous waste of judicial resources" to give Mr. Wanberg a trial. *Id.* ¶ 23, 466 P.3d at 274. We determined this finding was based on the district court's conclusion that if the victim had recanted, her recantation was not believable and would be rejected by a jury. *Id.* While we held this could be an appropriate finding if the district court had a means by which to evaluate the victim's testimony, Mr. Wanberg had not provided any evidence from which the district court could make a credibility determination. *Id.* ¶¶ 23–24, 466 P.3d at 274–75. Without such evidence, we decided the district court could not have reasonably concluded a trial would be a waste of time. *Id.* ¶ 24, 466 P.3d at 275.

[¶46] In *Demeulenaere*, Mr. Demeulenaere was arrested for possession of methamphetamine and marijuana after a traffic stop. *Demeulenaere*, ¶ 3, 197 P.3d at 1239. He pled guilty to unlawful possession of methamphetamine and marijuana. *Id.* ¶¶ 4, 7, 197 P.3d at 1239. He later moved to withdraw his plea, claiming he only pled guilty because he could not prove the traffic stop was pretextual as the videotape of the traffic stop was missing. *Id.* ¶ 8 197 P.3d at 1240. He claimed the videotape had been located and showed the stop was pretextual. *Id.* The district court denied the motion to withdraw. *Id.* ¶ 11, 197 P.3d at 1240. In addressing the seventh *Frame* factor, we concluded withdrawal of the plea would be a waste of judicial resources given the lengthy delays in the case and Mr. Demeulenaere's failure to making any showing that the traffic stop was pretextual. *Id.* ¶ 22, 197 P.3d at 1243.

[¶47] The district court did not provide reasons for determining that allowing Mr. Jarvis to withdraw his plea would waste the time, effort, and resources of the court, the parties, the victim, and the public. However, its determination is supported by the proceedings in this case including—Mr. Jarvis' cooperation with the State by bringing law enforcement to the safe and camera evidence, his request to pay $100 in restitution prior to pleading guilty, and his motion to be released on a personal surety bond in part to obtain employment to allow him to pay restitution. Such inculpatory facts demonstrate allowing Mr. Jarvis to withdraw his plea and proceed to trial would likely waste the time and resources of the court, the parties, and the victim. This factor weighs against Mr. Jarvis withdrawing his plea.

[¶48] While it would have been helpful and possibly narrowed the issues for appeal had the district court indicated whether each *Frame* factor weighed for, against, or was neutral with respect to allowing Mr. Jarvis to withdraw his plea, the district court's denial of Mr. Jarvis' motion to withdraw was reasonable. The court thoroughly considered each *Frame* factor. Despite our conclusion that the second, third, and fourth factors weigh in favor of

15

withdrawal or are neutral, the remaining factors weigh against withdrawal. The district court did not abuse its discretion when it determined Mr. Jarvis failed to establish a fair and just reason to withdraw his guilty plea.

## *CONCLUSION*

[¶49]  The district court did not abuse its discretion when it denied Mr. Jarvis' motion to withdraw his guilty plea.